MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. *v.* ETHAN
BOOK, JR., ET AL.
(AC 25524)

Flynn, C. J., and Schaller and Dupont, Js.

Argued May 31—officially released October 10, 2006

*Ethan Book, Jr.*, pro se, the appellant (named defendant).

*David F. Borrino*, for the appellee (plaintiff).

FLYNN, C. J. After what only can be described as a tortuous procedural history,[1] the defendant Ethan Book, Jr.,[2] ultimately appeals from the July 21, 2005 supplemental judgment of the trial court, as exemplified in writing on August 24, 2005, in favor of the plaintiff, Mortgage Electronic Registration Systems, Inc., ratifying the foreclosure sale of certain of the defendant's real property, ordering the disbursement of proceeds, awarding an additional $3600 in attorney's fees and granting the plaintiff's motion to reserve the remaining proceeds from the foreclosure sale. On appeal, the defendant claims that (1) the trial judge, *Richards, J.*, should have recused himself from participating in the foreclosure proceedings because of a conflict of interest, (2) a statement contained in the court's memorandum of decision was incorrect, (3) the court improperly ordered disbursement of the sale proceeds, (4) the court improperly awarded additional attorney's fees to the plaintiff's attorney and (5) the court improperly granted the plaintiff's motion to reserve the remaining proceeds.[3] We affirm the judgment of the trial court.

[1] The defendant has amended his appeal no fewer than seven times, and this court has considered at least forty motions during the pendency of this appeal. Our Supreme Court has denied the defendant's request for certification to appeal from the rulings of this court four times. See *Mortgage Electronic Registration Systems, Inc.* v. *Book*, 275 Conn. 914, 915, 882 A.2d 674, 675 (2005).

[2] The state department of revenue services also was a named defendant in this action. It had tax liens on the subject property, updated to include interest through September 15, 2005, in the amount of $26,857.09, for which it was seeking a supplemental judgment. For purposes of this appeal, however, all references to the defendant are meant solely to refer to Book.

[3] The defendant also filed an amended appeal challenging the court's denial of his motion for reargument or reconsideration of the July 21, 2005 supplemental judgment. This issue, however, has not been briefed by the defendant. Accordingly, we deem it abandoned. Additionally, the other six claims made by the defendant in this appeal relate to the propriety of the original judgment of foreclosure, earlier rulings and appeals that we already have deemed moot. Therefore, we decline to review them.

The factual and procedural history of this case is labyrinthine. Accordingly, we set forth a truncated version leading to the issues presented on appeal, lest sight of the forest be lost by dwelling on its individual trees. This foreclosure action began in June, 2003, and the court rendered a judgment of foreclosure by sale in March, 2004. The defendant filed a pro se appeal from the foreclosure judgment and from rulings on several postjudgment motions. This court dismissed the defendant's initial appeal as untimely except as to that portion challenging the denial of his motion to vacate the foreclosure judgment. In the interim, on September 27, 2004, the trial court, *Stevens, J.*, found the defendant in contempt of an order prohibiting him from filing a motion to vacate, to reconsider or to reargue an award of additional costs and fees to the foreclosure committee. The court also ordered that the defendant not file any further documents in the case without first obtaining the court's permission.

On January 3, 2005, the court found that the defendant was using our procedural rules for dilatory purposes and, as a result, modified its contempt sanction to preclude the defendant from filing any further motions seeking to reargue, to reconsider or to articulate and from filing any motion seeking permission to file such motions. On January 24, 2005, the defendant amended his appeal to include the prohibitory contempt order. On January 31, 2005, the court, *Richards, J.*, rendered a new foreclosure judgment with a sale date of March 26, 2005, and granted the plaintiff's motion to terminate prospectively any future appellate stay of the court's current orders or any orders that the court might render in the future. This court granted review of that order but denied the relief requested therein on February 18, 2005. A later request for reconsideration was granted, but the requested relief again was denied, and subsequent requests for articulation and reconsideration en

banc also were denied. On March 23, 2005, the defendant filed his third amended appeal from the new foreclosure judgment. On March 23, 2005, on its own motion, this court dismissed as moot that portion of the amended appeal challenging the motion to vacate the original foreclosure judgment and ordered portions of the defendant's brief stricken.

The foreclosure sale of the subject property occurred on March 26, 2005, and the court accepted the sale, deed and committee's report and granted the committee's motion for possession on May 9, 2005. The defendant then filed his fourth amended appeal from that decision, and he filed a motion for permission to file a supplemental brief. Because this court, after reviewing the trial court's order terminating all future stays, had refused to grant the relief requested by the defendant, a closing concerning the subject property was held on June 1, 2005, at which time title passed to the successful bidder. An ejectment order issued on June 14, 2005, and the defendant was ejected from the property on June 27, 2005. Because title and possession had passed to a third party, the defendant's amended appeal was moot except as to the court's prohibitory contempt orders.

On June 23, 2005, the plaintiff filed motions for a supplemental judgment, for additional attorney's fees and to reserve the balance of the proceeds from the foreclosure sale. On July 21, 2005, the court, *Richards, J.*, rendered a supplemental judgment ratifying the sale of the subject property, awarding additional attorney's fees, ordering disbursement of the sale proceeds and ordering the remainder of the proceeds held in reserve. On August 4, 2005, at the request of the plaintiff, Judge Stevens vacated his prohibitory contempt orders nunc pro tunc. The defendant filed a fifth amended appeal challenging the July 21, 2005 supplemental judgment. On August 24, 2005, the court, inter alia, denied the

defendant's motions for reconsideration and reargument of the July 21, 2005 supplemental judgment, and it issued a written order exemplifying the supplemental judgment of July 21, 2005, and specifying the disbursement of the proceeds.

On September 13, 2005, the defendant filed a sixth amended appeal from the court's August 24, 2005 judgment denying his motion for reargument or reconsideration and its written memorandum of decision exemplifying the July 21, 2005 supplemental judgment. On October 27, 2005, the plaintiff filed a motion to dismiss the amended appeals on the ground that the entire appeal was moot. On December 8, 2005, this court agreed in part and ordered that the defendant's appeal as amended be dismissed except as to his claims challenging the July 21, 2005 supplemental judgment of the trial court, as exemplified in the August 24, 2005 written order. This judgment and the written exemplification thereof ratified the foreclosure sale, awarded additional attorney's fees, ordered the disbursement of proceeds and ordered the remaining funds held in reserve. Additionally, we permitted the defendant to appeal from the August 24, 2005 judgment denying his motion to reargue or reconsider the July 21, 2005 supplemental judgment. Further, we ordered the defendant to file a substitute brief limited to these issues.[4]

I

The defendant first claims that Judge Richards should have recused himself, sua sponte, from participating in the foreclosure proceedings because of a conflict of interest. Specifically, the defendant argues that Judge

[4] On December 15, 2005, the defendant filed his seventh amended appeal challenging a further supplemental judgment of the trial court, concerning an award made to the state department of revenue services. On April 6, 2006, we ordered that appeal to be considered and briefed as a separate appeal, under a new Appellate Court docket number.

Richards formerly was a prosecutor and that he had represented the state in a motor vehicle matter against the defendant, thus creating an appearance of an impermissible conflict of interest in the present case. We do not agree.

The defendant did not preserve this claim by filing a motion for disqualification with the trial court, pursuant to Practice Book § 1-23,[5] but has requested on appeal that we invoke plain error review. See Practice Book § 60-5.[6] "It is a well settled general rule that courts will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court via a motion for disqualification or a motion for mistrial. . . . This court has also recognized, however, that a claim of judicial bias strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary. . . . No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality. If he departs from this standard, he casts serious reflection upon the system of which he is a part. . . . We review this claim, therefore . . . under a plain error standard of review." (Citations omitted; internal quotation marks omitted.) *Pickel* v. *Automated Waste Disposal, Inc.*, 65 Conn. App. 176, 180–81, 782 A.2d 231 (2001).

Canon 3 (c) (1) of the Code of Judicial Conduct "requires a judge to disqualify himself or herself in a

---

[5] Practice Book § 1-23 provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."

[6] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

proceeding in which the judge's impartiality might reasonably be questioned." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 460, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000). "Even in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority." (Internal quotation marks omitted.) Id., 460–61.

The standard to be employed when determining whether a judge should recuse himself pursuant to canon 3 (c) is well established. "The standard . . . is an objective one [meant to assess] whether [the judge] can be fair and impartial in hearing the case. . . . Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard. . . . The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his . . . impartiality, on the basis of all of the circumstances." (Internal quotation marks omitted.) *Sabatasso* v. *Hogan*, 91 Conn. App. 808, 825, 882 A.2d 719, cert. denied, 276 Conn. 923, 888 A.2d 91 (2005).

Nevertheless, "[a] factual basis is necessary to determine whether a reasonable person, knowing all of the circumstances, might reasonably question the trial judge's impartiality. . . . It is a fundamental principle that to demonstrate bias sufficient to support a claim

of judicial disqualification, the due administration of justice requires that such a demonstration be based on more than opinion or conclusion." (Citation omitted; internal quotation marks omitted.) *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 50, 830 A.2d 240 (2003). "Vague and unverified assertions of opinion, speculation and conjecture cannot support a motion to recuse . . . ." (Internal quotation marks omitted.) *State* v. *Montini*, 52 Conn. App. 682, 695, 730 A.2d 76, cert. denied, 249 Conn. 909, 733 A.2d 227 (1999).

In this case, the defendant argues that Judge Richards should have recused himself, sua sponte, even if the defendant failed to file a motion for disqualification. In the defendant's September 6, 2005 supplement to his motion for reconsideration of the August 24, 2005 written order exemplifying the July 21, 2005 supplemental judgment, the defendant claimed, apparently for the first time, that he recently had investigated his personal records and discovered that Judge Richards, as a former prosecutor, had represented the state in a New Haven motor vehicle matter against the defendant, thus creating the appearance of impropriety in the present case. He explained in this supplement to his motion for reconsideration that then assistant state's attorney Richards, in 1997, had appeared in the motor vehicle case on one occasion and had requested a continuance of the matter.

Although the defendant argues that the motor vehicle case and the present case share the same "interagency governmental conspiracy" issue, he has provided no evidence of Judge Richards' personal involvement in any alleged "conspiracy." The motor vehicle proceeding at which the defendant claims then assistant state's attorney Richards appeared to request a continuance took place in 1997. Even according to the defendant's recitation of the events, Judge Richards appeared only

once in that matter and performed only a limited function, merely requesting a continuance of the case. In considering the practical realities of prosecutors serving in busy geographical area courthouses and the amount of time that had elapsed since then assistant state's attorney Richards' appearance in the motor vehicle matter, we conclude that Judge Richards' impartiality in the present case cannot reasonably be questioned simply on the basis of his role as a prosecutor in a motor vehicle proceeding in which he appeared only once and merely requested a continuance of the matter. Accordingly, we conclude that the defendant has failed to establish that Judge Richards' participation in these foreclosure proceedings was a conflict of interest or that it was plain error for Judge Richards not to have recused himself sua sponte.

## II

The defendant next claims that the court made an incorrect statement in its August 24, 2005 written order that was inconsistent with the proceedings of July 21, 2005, and with the entire case. Specifically, he argues that "the portion of the . . . supplemental judgment . . . which states that 'no exception to the appraisal or report of sale having been filed' is incorrect . . . ." He further argues that the record demonstrates that he did contest these reports. We conclude that in the context of this case, where any challenges to these reports previously were deemed moot on appeal and title already had vested in another, this statement had no relevance to the court's supplemental judgment and was immaterial. Cf. *Rushchak* v. *West Haven*, 167 Conn. 564, 566, 356 A.2d 104 (1975) ("[a] finding will not be corrected to add . . . immaterial matter or facts which have no bearing on the issues on which the judgment was predicated"). Accordingly, the statement is not subject to correction in any manner that would aid the defendant. See id.

## III

The defendant next claims that the court improperly ordered disbursement of the sale proceeds. In addition to referencing issues that we previously have considered moot, the defendant states that a proper application of Practice Book § 71-6 should have prevented the court from allowing the funds to be distributed because a stay should have been effectuated. The plaintiff argues that Practice Book § 71-6 would not effectuate a stay in this case because the trial court had terminated the automatic stay and the Appellate Court had denied the defendant's motion for review of that termination.[7] We decline to review this claim because the defendant has not provided us with any legal citation or meaningful analysis concerning this claim. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Valentine* v. *LaBow*, 95 Conn. App. 436, 452, 897 A.2d 624 (2006).

## IV

The defendant next claims that the court improperly awarded $3600 in additional attorney's fees to the plaintiff.[8] Specifically, the defendant argues that the award of attorney's fees was unreasonable. We do not agree.

---

[7] We then granted the defendant's motion for reconsideration, but denied the relief requested therein. The defendant's subsequent motions for reconsideration en banc and for a discretionary stay also were denied.

[8] Insofar as the defendant actually claims that any award of attorney's fees in this action was unreasonable because "the plaintiff began this lawsuit in clear violation of the explicit contractual provisions," we do not consider the award for legal fees made prior to the July 21, 2005 supplemental judg-

"Whether any award [of attorney's fees] is to be made and the amount thereof lie within the discretion of the trial court, which is in the best position to evaluate the particular circumstances of a case. . . . A court has few duties of a more delicate nature than that of fixing counsel fees. The issue grows even more delicate on appeal; we may not alter an award of attorney's fees unless the trial court has clearly abused its discretion, for the trial court is in the best position to evaluate the circumstances of each case." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Owen*, 88 Conn. App. 806, 816, 873 A.2d 1003, cert. denied, 275 Conn. 902, 882 A.2d 670 (2005). "It is well settled that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing. . . . An evidentiary hearing is only one of many methods to satisfy this requirement. . . . A trial court may assess the reasonableness of the fees requested using any number of factors, including its general knowledge of the case, sworn affidavits or other testimony, itemized bills, and the like." (Citations omitted; internal quotation marks omitted.) *Premier Capital, Inc.* v. *Grossman*, 92 Conn. App. 652, 660, 887 A.2d 887 (2005).

On June 23, 2005, the plaintiff filed a motion for additional attorney's fees, requesting an additional $3600. In a sworn affidavit attached to the motion, the plaintiff's attorney specified all of the additional time he had spent responding to the defendant's appeal, listing each individual item and the hours spent preparing or filing those items, since the court rendered judgment on January 31, 2005, and made its initial award of attorney's fees. The plaintiff's attorney averred that his firm charged at the rate of $150 per hour and that the total additional hours incurred had been twenty-three and that he expected to spend one additional hour preparing

ment for additional legal fees, already having determined that any earlier claims are moot.

for and attending another hearing. On this basis, the plaintiff's attorney requested an additional award of $3600 to cover his fees. When considering this motion on July 21, 2005, the court specifically found that "[t]his case has had a long and tortured history. The total attorney's fees . . . based on that long history, are not at [all] exorbitant. In fact, they're quite reasonable, so in light of that, I'm going to grant the plaintiff's motion . . . for additional attorney's fees . . . ."

The defendant does not direct us to any charge contained in the plaintiff's affidavit that he considers to be unreasonable, nor does he analyze how the court's award was an abuse of discretion. Our own review of the affidavit supports the court's award of these additional fees, and we are unable to find anything in the record of the hearing that countered the attorney's affidavit. Accordingly, we conclude that the court did not abuse its discretion in awarding the additional attorney's fees to the plaintiff.

V

The defendant finally claims that the court improperly granted the plaintiff's motion to reserve the remaining proceeds from the foreclosure sale. Specifically, he argues that the plaintiff's motion primarily was to secure funds sufficient to cover additional attorney's fees but that, in light of the fees accumulated thus far in this action, $42,000 was an unreasonable amount to be ordered frozen.[9] The plaintiff argues that the court properly froze the remaining funds and that the defendant "proffers no evidence of and cites no support in the record for his assertion." We conclude that the

---

[9] The supplemental judgment actually ordered that $68,414.58 be held in reserve. This included an amount upon which the state had tax liens, updated to include interest through September 15, 2005, in the amount of $26,857.09. The propriety of these liens is the subject of an additional appeal. See footnote 4.

defendant has failed to prove that the court abused its discretion in ordering that the remaining funds be held in reserve.

"The distribution of a surplus from a foreclosure sale lies within the equity jurisdiction of the court." *Bryson* v. *Newtown Real Estate & Development Corp.*, 153 Conn. 267, 273, 216 A.2d 176 (1965). "The determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the . . . discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Rosenblit* v. *Williams*, 57 Conn. App. 788, 792, 750 A.2d 1131, cert. denied, 254 Conn. 906, 755 A.2d 882 (2000); *Citicorp Mortgage, Inc.* v. *Conant*, 54 Conn. App. 529, 532, 736 A.2d 928, cert. denied, 251 Conn. 909, 739 A.2d 264 (1999).

On June 23, 2005, the plaintiff filed a motion to reserve the remaining proceeds from the foreclosure sale in order to secure funds sufficient to cover any additional attorney's fees that would be incurred in the defendant's appeals. The defendant filed no written objection to this motion.

During the hearing on July 21, 2005, the plaintiff argued that its motion to reserve the entire balance of the sales proceeds was proper. In response, the state department of revenue services (state) argued that the balance should be held in reserve but only after its motion for supplemental judgment on its liens was heard and the funds to pay these liens were released to the state. The defendant orally objected to the motion, arguing that the plaintiff had not complied with the

terms of the note and that a stay of the foreclosure should be in place. He did not argue that holding all of the funds would be excessive or that it would be an abuse of discretion, nor did he file with the court a request to release any of the funds. The court granted the motion to hold the funds in reserve but also stated that it would permit the state to file a motion for further supplemental judgment in order to get its funds released. The defendant now argues that the plaintiff's motion was unreasonable in light of the fact that "from June, 2003, up to August 24, 2005," only $12,900 for professional services has been sought and obtained by the plaintiff.

At the time the court rendered the July 21, 2005 supplemental judgment, it was aware of the tax liens that had been filed by the state, which also was a party to this action and which was seeking a distribution from these proceeds to pay taxes. The court also was aware of appeals, amended appeals and numerous appellate motions that had been filed with this court. The record indicates that an action in federal court also had been filed. Although the accumulated professional fees through August 24, 2005, may have been only $12,900, the court did not know, nor could it have known, how much in the way of additional fees would be accumulated. Further, the court had not yet considered the state's claim regarding its tax liens. With the continued accumulation of additional fees, as well as the propriety of the state's tax liens, still to be determined by the court, we cannot conclude that it was an abuse of discretion for the court to order the remaining funds held in reserve at this particular juncture in the proceedings.

The judgment is affirmed.

In this opinion the other judges concurred.