# IN RE BRIANNA L.*
## (AC 34345)

DiPentima, C. J., and Robinson and Bear, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 27—officially released November 5, 2012**

*Megan P.*, pro se, the appellant (respondent mother).

*Stephen J. Courtney*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee (petitioner).

*Opinion*

ROBINSON, J. The respondent mother appeals from the judgment of the trial court terminating her parental

** November 5, 2012, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

rights as to her minor child, Brianna L.,[1] and committing Brianna to the custody of the petitioner, the commissioner of children and families. The respondent claims that the court improperly granted the petition to terminate her parental rights because (1) the petitioner failed to follow the laws and protocols for filing such a petition, (2) the court rendered judgment on the basis of discrimination and bias, (3) the court admitted inadmissible evidence of the respondent's misdemeanor arrest, (4) the court refused to allow her to call certain witnesses at the termination trial, (5) the court rendered judgment despite a conflict of interest and (6) the termination of her parental rights was not in the best interest of the child. We affirm the judgment of the court.

The following facts, which either were found by the court or are undisputed, and procedural history are relevant to our resolution of the respondent's claims. The respondent and her three minor children, Brianna and Brianna's two older half brothers, have a history with the department of children and families (department) that dates back to 2002, predicated on the respondent's history of medication abuse, mental health issues and domestic violence. In 2007, all three children were removed from the respondent's care for one year on the basis of what the court described as the respondent's extremely bizarre and irrational conduct.[2] The children

[1] The court also terminated the parental rights of Brianna's biological father, Thomas F., and denied a motion by the intervening maternal grandmother to transfer guardianship of Brianna to her. Because the respondent father has not appealed from the judgment terminating his parental rights and the maternal grandmother has not appealed from the denial of the motion to transfer guardianship, we refer to the respondent mother throughout this opinion as the respondent. We further note that, although the respondent was represented by counsel during the termination proceedings, she filed and argued this appeal as a self-represented party. See Practice Book § 35a-21.

[2] At the end of 2006, the respondent, who at the time was in the midst of divorcing her first husband, removed Brianna from day care and then went to the boys' school, where she reported to school officials that the boys wanted to kill themselves and that she was removing them to take them to

were returned to the respondent in January, 2008, under an order of protective supervision.

In February, 2010, the respondent was involved in a domestic violence incident with her second husband, Judson F. The respondent reported that Judson had punched her in the chest and attempted to choke her. That incident resulted in a protective order that required Judson to stay away from the respondent's home and from her children. Despite the protective order, however, the respondent continued to engage in contact with Judson.

On April 7, 2010, the petitioner filed a motion for order of temporary custody and a neglect petition on behalf of the children, alleging that the children were in immediate physical danger from their surroundings. The court, *Graziani, J.*, granted an ex parte order of temporary custody, which it later sustained on April 21, 2010, following a contested hearing. Although the court initially granted temporary custody of Brianna to the maternal grandparents, on May 12, 2010, the court, *Foley, J.*, modified that order, transferring temporary custody from the maternal grandparents to the petitioner.[3] On May 25, 2010, the petitioner moved Brianna

United Services, a behavioral health center. After the respondent took the boys from their classroom and left, the school reported the incident to the police. The police and a department investigator went to the respondent's home to check on the welfare of the children. The respondent claimed that the children were not home, but the police found the children in the closet in the master bedroom covered with blankets and pillows. The children reported that the respondent had told them to hide and that they were scared. One of the children stated that the respondent had first tried to hide them in the drawers of a dresser, but that they would not fit. As a result of the petitioner's ensuing investigation, a safety plan was implemented according to which the children were not to be in the unsupervised care of the respondent. Soon after, however, the department learned that the respondent was taking care of the children alone, and an order of temporary custody followed, removing the children from the respondent's care.

[3] The court awarded custody of the two half brothers to their biological father.

from the maternal grandparents' care to the care of her maternal uncle.

On October 22, 2010, the court, *Graziani, J.*, adjudicated Brianna and her half brothers as neglected and committed Brianna to the custody and care of the petitioner until further order of the court. The court ordered specific steps to be taken by the respondent in order to regain custody, including participating in family and individual counseling and engaging in parenting classes to understand the impact that domestic violence has on children. The respondent only marginally complied with the specific steps ordered, although she did complete programs on parenting education and domestic violence "after many delays and initial refusals." She was not fully cooperative with the department.

On January 10, 2011, the petitioner filed a motion to review permanency plan with the newly proposed goal of terminating parental rights and adoption. On March 28, 2011, following an evidentiary hearing on the motion to review permanency plan, Judge Graziani issued a written decision, finding, over the objection of both parents, that the plan to terminate parental rights was in the best interest of the child.

On June 9, 2011, the petitioner filed a petition to terminate the parental rights of the respondent and Brianna's biological father on the ground that Brianna previously was adjudicated neglected or uncared for and that the parents had failed to achieve the requisite degree of personal rehabilitation necessary to assume a responsible position in Brianna's life. See General Statutes § 17a-112 (j) (3) (B).[4] Following a three day

[4] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition [to terminate parental rights] . . . if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is

trial, Judge Foley rendered judgment terminating the respondent's parental rights, finding by clear and convincing evidence that the department had made reasonable efforts to reunify the respondent with Brianna but that the respondent had been unable to benefit from those efforts, that the respondent had failed to achieve sufficient personal rehabilitation to such a degree as to encourage a belief that she could assume a responsible position in Brianna's life within a reasonable period of time and that termination of parental rights was in Brianna's best interest. The court also issued a lengthy memorandum of decision setting forth the bases for its findings. This appeal followed. Additional facts will be set forth as necessary.

The standard of review we apply to claims of error on appeal from a judgment terminating parental rights is well established. We consider "whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually

not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required, (2) termination is in the best interest of the child, and (3) (A) the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child. . . .

"The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . We note that those seven factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered. . . . There is no requirement that each factor be proven by clear and convincing evidence." (Citations omitted; internal quotation marks omitted) *In re Rafael S.*, 125 Conn. App. 605, 610–11, 9 A.3d 417 (2010). With those general standards in mind, we now turn to the specific claims of error raised by the respondent.

I

The respondent first claims that the court improperly granted the petition to terminate her parental rights because the petitioner did not follow the laws and protocols for filing such petitions. In particular, she argues that the petitioner prematurely filed the petition because Brianna had been in the custody and care of the petitioner for only six months, which, according to the respondent, is far less than the fifteen to twenty-two months of custody mandated in the petitioner's policy manual as a prerequisite to seeking termination of parental rights. According to the respondent, the premature filing of the petition evidenced the petitioner's lack of any true intent to reunify her and Brianna and improperly limited the amount of time she had in which to demonstrate that she had achieved sufficient personal rehabilitation. Relying on the same section of the petitioner's policy manual, she also argues that the termination of parental rights was inappropriate because Brianna was not under the age of seven at the time the petition was filed. We find the respondent's arguments unpersuasive because they are based on a misunderstanding of the cited policy and other applicable law.

As long as there is clear and convincing evidence that a statutory ground for termination of parental rights exists, § 17a-112 (a) provides the petitioner with the authority to petition the court for the termination of parental rights with respect to any child who is committed to her care as the result of the child previously having been adjudicated as uncared for or neglected. There is no requirement in § 17a-112 or in any other relevant statute that a previously adjudicated child on whose behalf a petition to terminate parental rights is filed must have been in the custody of the petitioner for any specific period of time before such a petition may be filed. Similarly, there is no statutory requirement

that a minor child fall within a particular age group in order for the petitioner to seek termination of a parent's parental rights.

In support of her arguments that the petition to terminate her parental rights was premature and that Brianna was too old for the petitioner to seek to terminate the respondent's parental rights, the respondent relies on language found in § 46-3-21.5 of the policy manual of the department. See Dept. of Children and Families, Policy Manual, Vol. II, § 46-3.21.5, available at http://www.ct.gov/dcf/cwp/view.asp?a=2639&Q=395220 (last visited November 1, 2012). Our review of that policy section, however, indicates that it is inapplicable to the present situation and, therefore, does not provide any basis for reversing the court's judgment.[5]

Section 46-3-21.5 concerns the filing of coterminous petitions. Dept. of Children and Families Policy Manual, supra, § 46-3-21.5. A coterminous petition is defined as "the simultaneous filing of a neglect petition and a termination of parental rights petition on behalf of the same child, or the consolidation of the two petitions if the [petition to terminate parental rights] is filed before the neglect petition has been adjudicated." Id. According to the policy, several factual scenarios would justify the filing of a coterminous petition, including when "the parent of a child, under the age of seven (7), has failed, is unable or unwilling to achieve such degree of rehabilitation as would encourage the belief that, within a reasonable period of time, considering the age and needs of the child, the parent could assume a responsible role in the life of the child and such parent's parental rights were terminated on another child" or when "the child has been in the care and custody of [the department] for fifteen (15) consecutive months

---

[5] We note that, generally, it is our statutes and rules of practice that govern a court's termination of parental rights.

or fifteen (15) of the last twenty-two (22) months."[6] Id. It is the above quoted language that the respondent believes supports her arguments that the petition was premature and that Brianna was too old for the petitioner to seek to terminate the respondent's parental rights.

The present case, however, did not involve a coterminous petition to terminate parental rights; accordingly, § 46-3-21.5 of the department's policy manual is inapposite. In the present case, the court adjudicated Brianna neglected on October 22, 2010, and, at that time, committed her to the custody of the petitioner. The petition to terminate parental rights was filed more than seven months later on June 9, 2011. Because Brianna previously had been adjudicated as neglected and remained in the petitioner's custody, the petitioner was under no obligation to wait for fifteen months or any other specified length of time before petitioning for the termination of parental rights, assuming the petitioner otherwise could meet her burden of showing that there was a proper ground for termination and that termination was in the child's best interest. See General Statutes § 17a-112. The fact that Brianna was not under the age of seven at the time that the petitioner sought to terminate the respondent's parental rights also was not a determinative factor in whether the petition properly was before the court. We therefore must reject the respondent's first claim.

## II

We next address the respondent's claims that the court impermissibly rendered judgment on the basis of

---

[6] The language comports with § 17a-112 (j) (3) (B) (ii), which provides the court with the authority to adjudicate a termination of parental rights petition contemporaneously with a neglect petition, provided that the child in question "has been in the custody of the commissioner for at least fifteen months . . . ."

discrimination and bias. The respondent argues in her brief that the court rendered judgment against her "based mostly on" the respondent's "disability" and "socioeconomic status" in violation of her "civil and constitutional rights and in violation of the Americans with Disabilities Act [(ADA), 42 U.S.C. § 12101 et seq.]." The respondent suggests that the court favored terminating her parental rights and leaving Brianna in the care of Brianna's uncle because he was gainfully employed, whereas she has been unemployed and collecting social security. The respondent also claims that the court made prejudicial, improper and sarcastic remarks to witnesses and to her trial counsel in violation of rule 2.8 of the Code of Judicial Conduct.[7]

In support of her discrimination and bias claim, the respondent does not cite to any particular portions of the record or to specific passages in the court's memorandum of decision that would tend to support a claim that the court discriminated against her or rendered judgment terminating her parental rights wholly on the basis of a disability or her socioeconomic status. The respondent does not identify the particular disability to which she is referring in her claim, nor does she explain what provision of the ADA the court allegedly violated in rendering judgment. The respondent, in fact, fails to provide any legal analysis of her claims beyond a recitation of article first, §§ 7 and 20, of the constitution of Connecticut. In support of her claim of prejudicial comments by the judge, the respondent claims there were inappropriate comments "throughout the trial pages." Although she cites a few specific examples, she again provides no legal analysis relative to her claim that the referenced comments violated rule 2.8 of the Code of Judicial Conduct.

[7] Rule 2.8 (b) of the Code of Judicial Conduct provides in relevant part: "A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the judge deals in an official capacity . . . ."

"Although we are solicitous of the rights of pro se litigants . . . [s]uch a litigant is bound by the same rules . . . and procedure as those qualified to practice law. . . . [W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Traylor* v. *State*, 128 Conn. App. 182, 185 n.2, 15 A.3d 1173, cert. denied, 301 Conn. 927, 22 A.3d 1276 (2011). The respondent's mere assertion that the court acted with bias in this matter and discriminated against her in violation of her constitutional rights is insufficient to satisfy minimal appellate briefing requirements. Because the respondent has not briefed her claim adequately, we decline to review it.

### III

The respondent next claims that the court improperly admitted into evidence a police case report describing events that occurred on September 27, 2011, including the respondent's arrest for breach of the peace. The respondent contends that the court improperly relied on the case report in reaching its decision to terminate her parental rights and that the petitioner improperly used the report to influence adversely the opinion and testimony of Suzanne Ciaramella, the psychologist who conducted two court-ordered psychological evaluations of the respondent. The respondent argues that the report was inadmissible pursuant to § 4-5 of the Connecticut Code of Evidence, which provides in relevant part that "[e]vidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person."

Before we can reach the merits of the respondent's evidentiary claim, we first must determine whether the respondent properly preserved her claim for appellate

review. "[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *In re Tayler F.*, 111 Conn. App. 28, 45, 958 A.2d 170 (2008), aff'd, 296 Conn. 524, 995 A.2d 611 (2010). "[W]henever evidence is admitted without objection, the trier of fact can rely on its contents for whatever they are worth on their face." (Internal quotation marks omitted.) *In re Anna Lee M.*, 104 Conn. App. 121, 132, 931 A.2d 949, cert. denied, 284 Conn. 939, 937 A.2d 696 (2007).

Our review of the record reveals that the respondent's appointed counsel indicated at trial that she had "[n]o objection" to the case report being offered as a full exhibit. The respondent cannot now claim that it was improper for the court to have admitted the report pursuant to § 4-5 of the Connecticut Code of Evidence when no such objection was raised before the trial court. Because the respondent's evidentiary claim was not properly preserved, we decline to review the merits of her claim.

IV

We next consider the respondent's claim that the court refused to allow her to call certain witnesses on her behalf allegedly in violation of her rights under article first, § 8, of the constitution of Connecticut[8] and

[8] Article first, § 8, of the constitution of Connecticut provides in relevant part that "[i]n all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause

rule 2.6 of the Code of Judicial Conduct.[9] According to the respondent, the court did not allow her trial counsel to call the guardian ad litem who had been appointed on behalf of Brianna's half brothers as a witness at trial, and the court also "made it unable" for her counsel to recall her therapist and her psychiatrist to rebut the testimony of Ciaramella.[10] Other than baldly asserting her claim, however, the respondent's brief contains no legal analysis of the alleged violation of her state constitutional rights or of the court's alleged judicial misconduct. As previously stated in this opinion, "[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Traylor* v. *State*, supra, 128 Conn. App. 185 n.2. We decline to review the respondent's claim because it has not been briefed adequately.

V

The respondent next claims that the court improperly rendered judgment terminating her parental rights despite a conflict of interest in violation of rule 2.11 of the Code of Judicial Conduct.[11] The respondent states that, "within the same time frame" as the termination

of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf . . . ."

[9] Rule 2.6 (a) of the Code of Judicial Conduct provides: "A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law."

[10] Our review of the relevant transcript reveals that counsel for the respondent sought to call the half brothers' guardian ad litem for the purpose of admitting a letter referred to in testimony by an earlier witness, but objected to by the petitioner as hearsay. Although counsel for the petitioner questioned the relevancy of the letter to the matter before the court, he nevertheless later agreed to allow the letter to come into evidence, thus apparently obviating any need for testimony by the guardian ad litem. We further note that the respondent has not identified any particular portion of the transcript evidencing the court's denial of a request by counsel to recall any witness, nor does our review of the transcripts reveal any such request or refusal.

[11] Rule 2.11 (a) of the Code of Judicial Conduct provides in relevant part that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned . . . ."

of parental rights proceedings, Judge Foley presided over a trial involving the brother of Judson F. The respondent has failed, however, to preserve this claim for appellate review because she never filed a motion for disqualification with the court pursuant to Practice Book § 1-23. See *Danzig* v. *PDPA, Inc.*, 125 Conn. App. 242, 252 n.7, 9 A.3d 382 (2010), cert. denied, 300 Conn. 920, 14 A.3d 1005 (2011); *Mortgage Electronic Registration Systems, Inc.* v. *Book*, 97 Conn. App. 822, 828, 908 A.2d 547 (2006). The respondent also has failed to request that we apply the plain error doctrine. See Practice Book § 60-5; see also *Mortgage Electronic Registration Systems, Inc.* v. *Book*, supra, 828. Accordingly, we will not review her claim.

VI

Finally, the respondent argues that the petitioner failed to prove by clear and convincing evidence that the termination of parental rights was in the best interest of Brianna. The respondent argues that the evidence shows that, because of her age, Brianna has an absolute bond with the respondent and with her half brothers, and that removing her from the only family she has known for the majority of her life would not be in her best interests. We are not persuaded.

As previously stated, "[i]n the dispositional phase . . . the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . It is well settled that we will overturn the trial court's decision that the termination of parental rights is in the best interest of the children only if the court's findings are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *In re Devon W.*, 124 Conn. App. 631, 648–49, 6 A.3d 100 (2010).

Here, the court considered and made specific written findings as to each of the factors set forth in § 17a-112 (k).[12] Of particular relevance are the following factual findings. Although the department offered the respondent many services aimed at facilitating the return of her children, including domestic violence counseling, parenting education, supervised visitation, individual counseling and medication management, those services did not result in an improvement in the respondent's functioning. "A child could not be placed with her with any confidence that [the respondent], awash in opiates, inclined to dysfunctional relationships and often a dishonest reporter, would properly supervise and care for Brianna." Brianna has adjusted very well to living with her uncle and his family, and they have provided the day-to-day physical, emotional, moral and educational

---

[12] General Statutes § 17a-112 (k) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

support that Brianna needs. Her uncle and aunt are committed to and would like to adopt Brianna. Although Brianna has a significant bond with her mother, that relationship is forced and lacks boundaries. The relationship is more of a friendship rather than a true mother-daughter relationship. Although ongoing contact between Brianna and the respondent would be desirable, the respondent's conduct in undermining the parental authority control of her brother and his wife has made any temporary guardianship options unworkable and undesirable to them because they fear the financial and time constraints of continuous litigation with the respondent. Brianna is a nine year old child, and, as she approaches early adolescence, she needs a structured environment with strong parental models, which the respondent cannot provide. Although the respondent maintains consistent and regular contact with Brianna, she tries to undermine the uncle's authority, putting Brianna in a position of divided loyalty.

On the basis of its findings and its consideration of all relevant factors, the court ultimately reached the conclusion that it was in Brianna's best interest to terminate the parental rights of the respondent. Other than making generalized assertions that termination would not be in Brianna's best interest, the respondent has failed to indicate which of the court's many subordinate findings are clearly erroneous or to provide any analysis from which we could make such a determination. On the basis of our review of the trial court's detailed memorandum of decision and the evidence contained in the record, we conclude that the court's finding that the termination of the respondent's parental rights is in the best interest of Brianna is well supported by the evidence and, therefore, not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.