# STATE OF CONNECTICUT *v.* CURTIS BOWMAN
## (SC 17699)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued October 20—officially released December 30, 2008

*Lauren Weisfeld*, assistant public defender, for the defendant (appellant).

*Sarah Hanna*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, senior assistant state's attorney, for the state (appellee).

*Opinion*

VERTEFEUILLE, J. The defendant, Curtis Bowman, appeals directly to this court pursuant to General Statutes § 51-199 (b) (3)[1] from the judgment of conviction, rendered after a jury trial, of one count each of murder in violation of General Statutes § 53a-54a and arson in the second degree in violation of General Statutes § 53a-112 (a) (1) (B), and two counts of tampering with physical evidence in violation of General Statutes § 53a-155 (a) (1). The defendant claims on appeal that the trial court improperly: (1) instructed the jury on the affirma-

---

[1] General Statutes § 51-199 (b) provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

tive defense of extreme emotional disturbance; and (2) admitted into evidence "exceptionally gruesome" photographs of the deceased victim.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant has a history of suffering from psychosis, which causes him auditory hallucinations,

[2] The defendant also raised the claim that the trial court's instruction on reasonable doubt was improper. He concedes that this claim is unpreserved, and requests that we review it under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and the plain error doctrine. We note that while the defendant's claim passes muster under the first two prongs of *Golding* and thus warrants our review, it ultimately fails under the third prong and, accordingly, we reject it. We are also mindful that the defendant acknowledges that this court previously has rejected similar claims, and that he admittedly raises this issue in anticipation of a future federal habeas corpus claim.

The trial court instructed the jury that "reasonable doubt . . . is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence. . . . Reasonable doubt is the kind of doubt upon which reasonable persons, like yourselves, in the more serious and important affairs in your own lives would hesitate to act." Specifically, the defendant asserts on appeal that such a charge dilutes the state's burden of having to prove guilt beyond a reasonable doubt. It is well established that "the definition of reasonable doubt as a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence . . . and as a doubt which in the serious affairs which concern [the juror] in every day life [the juror] would pay heed and attention to does not dilute the state's burden of proof when such definitions are viewed in the context of an entire charge." (Internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 371, 796 A.2d 1118 (2002); see also *State* v. *Betances*, 265 Conn. 493, 510, 828 A.2d 1248 (2003); *State* v. *Whipper*, 258 Conn. 229, 297, 780 A.2d 53 (2001), overruled in part on other grounds by *State* v. *Cruz*, 269 Conn. 97, 106, 848 A.2d 445 (2004); *State* v. *Velasco*, 253 Conn. 210, 249, 751 A.2d 800 (2000); *State* v. *Morant*, 242 Conn. 666, 688, 701 A.2d 1 (1997); *State* v. *Kelley*, 229 Conn. 557, 567–68, 643 A.2d 854 (1994); *State* v. *Smith*, 210 Conn. 132, 147–50, 554 A.2d 713 (1989); *State* v. *Derrico*, 181 Conn. 151, 170, 343 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).

"We conclude that the defendant here has offered no compelling reason for us to reconsider these cases. Moreover, we see no reasonable possibility that the challenged language, when read in the context of the entire charge regarding reasonable doubt, misled the jury in its understanding of the state's burden of proving the defendant's guilt beyond a reasonable doubt." *State* v. *Ferguson*, supra, 260 Conn. 371. Accordingly, we reject the defendant's claim of instructional impropriety and conclude that the trial court properly instructed the jury on reasonable doubt.

delusions and severe fear, paranoia and anxiety. He has been both institutionalized and treated with a variety of antipsychotic medications. For the most part, however, when not institutionalized, the defendant has failed to continue taking his medications because he has no health insurance and cannot independently afford the medication. During these periods, the defendant often has resorted to the abuse of alcohol and illegal drugs, including marijuana, cocaine, ecstasy, phencyclidine or PCP, and "wet," which is marijuana that has been dipped in embalming fluid.

The defendant and the victim, Laurisse DaSilva, began dating in November, 2002, and dated for nearly seven months leading up to the day of the murder. Throughout their relationship, the defendant and the victim regularly abused both alcohol and illegal drugs. On the morning of July 13, 2003, the defendant and the victim were heavily under the influence of alcohol and illegal drugs when they drove with the defendant's brother to drop him off at work. They continued to use illegal substances during the course of the trip, stopping one time on the side of the road. The defendant's brother testified at trial that on that morning, the defendant and the victim were "high out of their mind[s] . . . ." On the way home, the defendant and the victim drove to a secluded road in New Haven.

There, after he and the victim consumed more illegal drugs, including cocaine and marijuana, they got into an argument, and, while still in the car, the defendant stabbed the victim several times in the chest and neck with a knife. When the victim then got out of the car and tried to run away, the defendant backed the car over her. He then beat her with a tire iron, causing blunt trauma to her head, chest and abdomen. Finally, he lifted the victim's body, put her in his car, and drove to a secluded dead-end street fourteen blocks away,

where he dragged her body from the car and concealed it in a brush area.

The defendant then drove home, where he met his mother and appeared visibly confused about what had transpired and the victim's whereabouts. After telling his mother that he would go look for the victim, the defendant then drove his car to a secluded and abandoned parking lot. There, he removed the tire iron from the car, placed the bloody knife in the car, and set the car on fire using gasoline, trash and matches. After returning home on foot, the defendant turned himself in to the police and confessed to killing the victim.

The defendant subsequently was charged with murder, arson in the second degree, and two counts of tampering with physical evidence. At trial, both the state and the defense presented evidence, including expert testimony, regarding the defendant's history of psychosis and its effect on the defendant at the time of the murder. The jury returned a guilty verdict on all four counts. The trial court rendered judgment in accordance with the verdict, and this appeal followed.

I

The defendant first claims that the trial court improperly instructed the jury on the affirmative defense of extreme emotional disturbance. Specifically, the defendant asserts that by improperly defining the term "extreme" as "the greatest degree of intensity away from the normal state of the defendant," the trial court denied him the right to present his defense and violated his state constitutional right not to be discriminated against or denied equal protection because of his mental disability. The defendant concedes that this claim is unpreserved, and requests that we review it under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and the plain error doctrine, which is now codified at

Practice Book § 60-5.[3] In response, the state contends that this claim is not reviewable under the second prong of *Golding* because unpreserved claims relating to the trial court's instructions on extreme emotional disturbance are not of constitutional magnitude. The state further claims that this case does not present the "extraordinary situation" required for application of the plain error doctrine. We agree with the state.

The following undisputed additional facts and procedural history are relevant to our resolution of this claim. At trial, the defendant asserted extreme emotional disturbance as an affirmative defense. He presented both lay and expert testimony regarding his history of psychosis, and claimed that, at the time of the murder, the symptoms of his mental illness were uncontrolled because he was not taking medication. At the conclusion of the trial, before instructing the jury, the trial court provided the state and the defendant with its proposed charge, and asked both parties to state any comments or objections for the record. The defendant did not take exception to any portion of the trial court's written charge. The trial court subsequently instructed the jury that in the defense of extreme emotional disturbance, "[t]he word 'extreme' refers to the greatest degree of intensity away from the normal state of the defendant." The defendant again failed to take exception to the charge as given by the trial court.

[3] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . .

"It is the responsibility of the appellant to provide an adequate record for review as provided in Section 61-10."

We first address the reviewability under *Golding* of the defendant's claim that the trial court improperly instructed the jury as to the definition of "extreme" for the purposes of his extreme emotional disturbance defense. "[I]f a defendant fails to preserve a claim for appellate review, we will not review the claim unless the defendant is entitled to review under the plain error doctrine or the rule set forth in *State* v. *Golding*, [supra, 213 Conn. 239–40]." *State* v. *Spencer*, 275 Conn. 171, 177, 881 A.2d 209 (2005); *State* v. *Ramos*, 261 Conn. 156, 171, 801 A.2d 788 (2002). "A party is obligated . . . affirmatively to request review under these doctrines." *State* v. *Ramos*, supra, 171, citing *State* v. *Waz*, 240 Conn. 365, 371 n.11, 692 A.2d 1217 (1997) ("defendants who seek consideration of unpreserved constitutional claims [on appeal] . . . bear the burden of establishing their entitlement to such review under the guidelines enumerated in *Golding*").

"Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if the following conditions are satisfied: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *DeJesus*, 260 Conn. 466, 472, 797 A.2d 1101 (2002); see also *State* v. *Peeler*, 271 Conn. 338, 359–60, 857 A.2d 808 (2004), cert. denied, 516 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation

marks omitted.) *State* v. *Brown*, 279 Conn. 493, 500, 903 A.2d 169 (2006); *State* v. *Peeler*, supra, 360.

Although we agree with the defendant that the record is adequate for our review of his claim, we are not persuaded that the defendant's claim is of constitutional magnitude, as is required under the second prong of *Golding*. In *State* v. *Austin*, 244 Conn. 226, 243–44, 710 A.2d 732 (1998), this court specifically declined to review under *Golding* an identical claim by the defendant regarding the same definitional jury instruction for extreme emotional disturbance. This court recognized that, because it is well established that "improper jury instructions concerning the defense of extreme emotional disturbance are not of constitutional dimension," claims of this nature fail under the second prong of *Golding* and therefore do not warrant our review. Id., 244; see also *State* v. *Foreshaw*, 214 Conn. 540, 546, 572 A.2d 1006 (1990) ("claims of error pertaining to the inadequacy of instructions on an affirmative defense do not raise a constitutional question" [internal quotation marks omitted]), quoting *State* v. *Suggs*, 209 Conn. 733, 751, 553 A.2d 1110 (1989).

The defendant asks us to overrule our conclusions in both *Austin* and *Foreshaw* that unpreserved claims of impropriety in jury instructions concerning the affirmative defense of extreme emotional disturbance are not of constitutional magnitude. The defendant provides us with no compelling reason to overrule these cases, however, and asserts only that these cases "are erroneous and should be reconsidered." In *State* v. *Raguseo*, 225 Conn. 114, 127, 622 A.2d 519 (1993), this court addressed a similar claim by the defendant that a line of cases should be overruled, and it specifically rejected that assertion, concluding that "the defendant has not presented any significant justification for overruling [the prior cases] other than an unsupported claim that the standard is unworkable." The same is true

here. Because "[a] court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it," we decline to do so. (Internal quotation marks omitted.) Id., 127–28; see also *State* v. *Dehaney*, 261 Conn. 336, 370–71, 803 A.2d 267 (2002) (following rationale of *Raguseo*), cert. denied, 537 U.S. 1217, 123 S. Ct. 1318, 154 L. Ed. 2d 1070 (2003).

The defendant's claim also does not warrant review under the plain error doctrine because the trial court properly instructed the jury. See Practice Book § 60-5. "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court *invokes* in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless *requires reversal of the trial court's judgment,* for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . [I]nvocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Kirk R.*, 271 Conn. 499, 507–508 n.14, 857 A.2d 908 (2004); see also *State* v. *Fagan*, 280 Conn. 69, 87, 905 A.2d 1101 (2006) (plain error review is extraordinary doctrine that should be used sparingly), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

This court previously has concluded that the definition of extreme used by the trial court in this case is proper. In *State* v. *Elliott*, 177 Conn. 1, 10, 411 A.2d 3 (1979), this court specifically adopted the same definition: "In its charge, the trial court should explain that the term 'extreme' refers to the greatest degree of intensity

away from the norm for that individual." See *State* v. *Austin,* supra, 244 Conn. 243 n.18; see also *State* v. *Ortiz,* 217 Conn. 648, 654, 588 A.2d 127 (1991) ("the [extreme emotional disturbance] statute plainly requires [the jury's] determination to be made from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be" [internal quotation marks omitted]); *State* v. *Steiger,* 218 Conn. 349, 385, 590 A.2d 408 (1991) ("the determination of the reasonableness of the explanation or excuse for the emotional disturbance must be measured from the viewpoint of a reasonable person in the defendant's situation under the circumstances as the defendant believed them to be").

The defendant asserts that the jury instructions given by the trial court in the present case, which we specifically approved in *Elliott,* "[call] for much greater subjectivity than the statute intended, penalizing those such as this defendant who have a history of severe mental illness, and a documented greater susceptibility to emotional lability and reaction." We disagree. The standard for the definition of extreme in the defendant's affirmative defense of extreme emotional disturbance should be "a standard that is objective in its overview, but subjective as to the defendant's belief . . . ." *State* v. *Ortiz,* supra, 217 Conn. 653; see also *State* v. *Raguseo,* supra, 225 Conn. 127; *State* v. *Elliott,* supra, 177 Conn. 10. The standard we articulated in *Elliott,* and which the trial court followed in the present case, properly strikes this subjective-objective balance, and thus is proper. When a trial court properly has instructed the jury, a defendant's unpreserved claim of instructional impropriety "does not warrant review under the plain error doctrine . . . ." *State* v. *Austin,* supra, 244 Conn. 244.

## II

The defendant next claims that the trial court improperly admitted into evidence eight "exceptionally gruesome" photographs of the deceased victim. Specifically, the defendant asserts that because neither the injuries nor the cause of death were disputed, the admission of the photographs violated his due process right to a fair trial. As with his first claim, the defendant concedes that this claim is unpreserved, but requests that we review it under *Golding* and the plain error doctrine. In response, the state contends that because the defendant failed to object to the admissibility of the photographs at trial, the defendant's claim amounts to nothing more than an unpreserved evidentiary claim, which is not reviewable under *Golding*, and which did not result in any "manifest injustice" to the defendant, thereby precluding plain error review. We agree with the state.

The following undisputed additional facts and procedural history are relevant to our resolution of this claim. At trial, the state introduced eight large color photographs of the victim's body, both as it was found by the police at the crime scene and as it appeared during the autopsy in the medical examiner's office. The photographs were used by the state to explain the layout of the crime scene as well as to explore the extent of the victim's injuries. The trial court admitted the photographs as full exhibits after the defendant stated that he had no objection to their admission.

We first address the reviewability under *Golding* of the defendant's claim that the trial court's admission of the eight allegedly gruesome photographs violated his constitutional right to a fair trial. The general rule is well established that "the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved."

(Internal quotation marks omitted.) *State* v. *Walker*, 215 Conn. 1, 5, 547 A.2d 188 (1990), quoting *State* v. *Periere*, 186 Conn. 599, 611, 442 A.2d 1345 (1982); see also *State* v. *Taylor*, 239 Conn. 481, 493, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997); *State* v. *Vilalastra*, 207 Conn. 35, 46, 540 A.2d 42 (1988); *State* v. *Talton*, 197 Conn. 280, 289–90, 497 A.2d 35 (1985). Furthermore, "a trial court has broad discretion in weighing the potential prejudicial effect of a photograph against its probative value." (Internal quotation marks omitted.) *State* v. *Satchwell*, 244 Conn. 547, 575, 710 A.2d 1348 (1998), quoting *State* v. *Doehrer*, 200 Conn. 642, 651, 513 A.2d 58 (1986).

This court consistently has held that the admissibility of allegedly inflammatory photographs is entirely within the broad discretion of the trial court, and that their admission as relevant to the state's case does not implicate a defendant's constitutional right to a fair trial. See, e.g., *State* v. *Kelly*, 256 Conn. 23, 65, 770 A.2d 908 (2001); *State* v. *Satchwell*, supra, 244 Conn. 576, citing *State* v. *Hanna*, 150 Conn. 457, 461, 191 A.2d 124 (1963); *State* v. *Ross*, 230 Conn. 183, 277, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995). Moreover, "[t]he defendant has failed to cite a single case from any jurisdiction wherein any court has held that the admission into evidence of a photograph in a situation even remotely analogous to that on appeal is constitutional [impropriety], state or federal." *State* v. *Walker*, supra, 215 Conn. 5.[4] This failure is fatal to the defendant's claim for *Golding* review.

[4] The defendant relies on *State* v. *Glenn*, 194 Conn. 483, 493, 481 A.2d 741 (1984), and *State* v. *Yates*, 174 Conn. 16, 19, 381 A.2d 536 (1977), to support his claim that "it is always the trial court's duty to protect a defendant's constitutional right to a fair trial, and to 'prevent situations from arising during the trial which would prejudice the accused in the minds of the jury.'" Although these cases may support that proposition, they are wholly irrelevant to the defendant's claim in the present case. Neither case concerns the admissibility of photographs, but, rather, allegations of prosecutorial misconduct and prejudicial testimony. The defendant's reliance is misplaced,

Accordingly, it is clear that the defendant "has put a constitutional tag on a nonconstitutional evidentiary ruling." (Internal quotation marks omitted.) Id.; see also *State* v. *Schiappa*, 248 Conn. 132, 164, 728 A.2d 466 ("a nonconstitutional claim cannot be transformed into a constitutional claim simply by virtue of the label placed upon it by a party"), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999); *State* v. *Taylor*, supra, 239 Conn. 502–503 ("it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party"). The defendant's unpreserved claim is not reviewable under *Golding*.

Moreover, we decline to address the defendant's claim under the plain error doctrine. The trial court acted properly within its broad discretion in determining to admit the eight photographs offered by the state not objected to by the defendant. This is not an appropriate occasion for the exercise of the extraordinary remedy of plain error review. This court has consistently held that "photographic evidence is admissible where the photograph has a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry. . . . [Moreover] [t]here is no requirement . . . that a potentially inflammatory photograph be essential to the state's case in order for it to be admissible; rather, the test for determining the admissibility of the challenged evidence is relevancy and not necessity." (Internal quotation marks omitted.) *State* v. *Satchwell*, supra, 244 Conn. 574; see also *State* v. *Kelly*, supra, 256 Conn. 65; *State* v. *Deleon*, 230 Conn. 351, 368–69, 645 A.2d 518 (1994); *State* v. *Ross*, supra, 230 Conn. 277; *State* v. *Williams*, 227 Conn. 101, 111, 629 A.2d 402 (1993). Indeed, "even gruesome photographs are admissible if

and disregards this court's previous conclusion that the admission of allegedly gruesome photographs does not violate the defendant's constitutional right to a fair trial.

they would prove or disprove a material fact in issue, or illuminate a material inquiry." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 102, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). In particular, "photographs of a corpse have been held properly admissible in prosecutions for homicide as against objections on the ground of prejudicial gruesomeness . . . ." (Internal quotation marks omitted.) *State* v. *Satchwell*, supra, 576, quoting *State* v. *Hanna*, supra, 150 Conn. 461; see also *State* v. *Piskorski*, 177 Conn. 677, 702, 419 A.2d 866 ("[w]here, as here, much of the evidence in a case is such as to indicate that a crime was committed with extreme atrocity and violence, photographs, regardless of their gruesomeness, can add little to inflame or prejudice the jury" [internal quotation marks omitted]), superseded by statute on other grounds as stated in *State* v. *Canady*, 187 Conn. 281, 283–84, 445 A.2d 895 (1982).[5]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[5] We note that the defendant himself relied on the photographs in his closing argument to the jury, asserting that they directly supported his affirmative defense of extreme emotional disturbance. Defense counsel stated: "Now, you're going to see these photographs and they are horrendous, terrible, and I saw the reaction of some of you when they were first placed on that four-by-five screen. How could you not be shocked? I've been doing this a long time, and they are probably some of the most disturbing photographs I've ever seen.

"And that's a problem, but those photographs and the condition the [victim] was in when those photographs were taken also speak to the lack of control. That's not a rational act. You can't look at those photographs, knowing that [the defendant] loved [the victim], and somehow reconcile in your mind a cold-blooded, objective rational act. And the state talks about farthest from normal? If that's not as far from normal, then I've never seen it across a long time."