******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE KASMAESHA C. ET AL.*
(AC 35811)

Lavine, Beach and Lavery, Js.

*Argued January 6—officially released February 28, 2014***

(Appeal from Superior Court, judicial district of
Hartford, Juvenile Matters, Dannehy, J.)

*David J. Reich*, assigned counsel, for the appellant
(respondent mother).

*Susan T. Pearlman*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon* and *Michael Besso*, assistant attorneys general, for the appellee (petitioner).

*Opinion*

LAVERY, J. The respondent mother[1] appeals from the judgments of the trial court terminating her parental rights as to her minor children, K and Z. The respondent claims: (1) due process required that the trial court grant her a continuance and an opportunity to regain her competency so that she could assist in the defense of the action; (2) the court's use of the findings in the competency evaluation as evidence that she failed to achieve personal rehabilitation violated Practice Book §§ 34a-21 and 32a-1 (h); and (3) the court erred in finding that the respondent failed to achieve a degree of personal rehabilitation such as to encourage a belief that she could assume a responsible position in the lives of her children pursuant to General Statutes § 17a-112 (j) (3) (B). We affirm the judgments of the trial court.

The following facts and procedural history are relevant to this appeal. K was born in 2007. Her brother, Z, was born in 2009. On March 5, 2011,[2] the respondent walked into the emergency department of a hospital, accompanied by K and Z, exhibiting psychotic behaviors, and reporting that she had placed a fetus in the freezer. She was uncooperative and taken by security to the psychiatric division of the hospital. Shortly thereafter she was admitted as an inpatient at the Institute of Living of Hartford Hospital. Upon discharge, she was referred to Community Health Services for outpatient treatment, but she failed to follow through.

On March 5, 2011, the petitioner, the Commissioner of Children and Families (commissioner) invoked a ninety-six hour hold on behalf of the children pursuant to General Statutes § 17a-101g.[3] An ex-parte order of temporary custody was issued on March 9, 2011, which was sustained by agreement on March 18, 2011. The children were placed together in a nonrelative foster home in March, 2011, and remained there.[4]

On September 19, 2011, the respondent was hospitalized for a second time after a social worker, calling on behalf of the Department of Children and Families (deparment) to confirm her next visit with her children, found it apparent that she was confused and psychotic, and upon referral to a mental health center, she was found to be disorganized and suicidal. She was evaluated and admitted to the psychiatric ward. Upon discharge, she was referred to outpatient programs in Bridgeport; however, despite assistance from the department, the respondent missed numerous intake appointments, and eventually showed up at a rescheduled appointment to state that she did not need mental health treatment or medication. At this time, she continued to be unemployed and continued to live a transient lifestyle. She failed to attend supervised scheduled visits with the department despite the department's efforts to assist her by providing bus passes and transportation.

The children were adjudicated neglected on September 29, 2011. Specific steps for reunification were issued at the time that the order of temporary custody was sustained and again at the time of the adjudication and disposition. The commissioner filed petitions to terminate the respondent's parental rights on June 25, 2012.

On August 2, 2012, upon motion by the respondent's counsel, the court, *Keller, J.*, ordered a competency evaluation of the respondent to determine whether a guardian ad litem should be appointed for her assistance. The evaluator, Edward Rabe, a psychiatrist, concluded that the respondent is "impaired by a thought disorder that affects her insight and decision-making abilities" and that, in Rabe's opinion, her "impairment renders her incompetent to assist her attorney in her own defense." Rabe further determined that "[w]hile [the respondent's] impaired functioning may be due in part to language barrier and/or medication side effect, she does exhibit a global deficit in her ability to produce goal directed thinking. Such deficit is due to major mental illness and is persistent. There is no intervention that would restore her to competency in this area." On February 5, 2013, the court, *Dannehy, J.*, found the respondent not competent and not restorable to competency, and appointed her a guardian ad litem to assist her attorney in the defense of the commissioner's petition.

In September, 2012, the respondent was hospitalized for a third time after exhibiting out of control behavior at her sister's apartment in Bridgeport, such as telling her sister that she could see her social worker on television, hitting herself, and yelling at those around her, including her sister's children. She was admitted to a hospital and was diagnosed with schizophrenia. She was discharged to a partial hospitalization program. She began to cooperate with treatment. At the time of trial, she received mental health treatment five times a week, which included individual therapy, group therapy, and medication management. A visiting nurse came to her home twice a day to administer medication, and she received monthly injections of Haldol.

From the date that her children were removed until the date that the commissioner filed the termination of parental rights petitions, the respondent reported approximately twelve different residences. She claimed to have lived with friends, relatives, and shelters, and to have moved between Hartford, Bridgeport, Florida, and Glastonbury, residing in each location for variable durations. She recently signed a lease for an apartment in Bridgeport, but it is without furniture, and its monthly rent exceeds her income. She shares the apartment with her current boyfriend who is a convicted felon with a record of domestic violence. His name does not appear on the lease. The respondent is not employed and her

income consists of $700 a month in social security supplemental security income benefits.

At trial, the respondent was represented by counsel as well as a guardian ad litem. The respondent's representatives never filed a motion for a continuance or a motion for a second competency hearing. On May 31, 2013, in a memorandum of decision, the court, *Dannehy, J.*, sua sponte reviewed the procedural safeguards outlined in *Mathews* v. *Eldridge*, 424 U.S. 319, 332–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), and determined that the due process protections to which the respondent was entitled were provided, and that the case properly proceeded to trial because the evidence indicated that the "remote possibility" of an erroneous termination decision was "greatly outweighed by the [children's] needs [as well as] the opportunity for counsel and her guardian to prepare . . . for the trial." The court then turned to the merits of the petitions and determined that the commissioner established with clear and convincing evidence that the department made reasonable efforts to reunify the respondent with her children, that the respondent failed to achieve such a degree of personal rehabilitation as would encourage the belief that she could assume a responsible position in the life of her children within a reasonable time, in accordance with § 17a-112 (j) (3) (B) (i), and that it was in the children's best interest to terminate the respondent's parental rights. Accordingly, the court terminated the respondent's parental rights. This appeal followed.

I

The respondent first claims that the court erred in failing sua sponte to order a continuance. Specifically, she argues that she exhibited progress in the maintenance of her life and her mental health, such that due process required the court sua sponte to order a continuance so that she could continue to improve to a point where she could assist in her defense. We disagree.

"In the termination [of parental rights] setting, only General Statutes § 45a-708 (a) addresses the competency issue.[5] That provision requires that a guardian ad litem be appointed for a parent who appears to be a minor or incompetent. The plain language of § 45a-708 (a) does not provide for an evidentiary hearing, nor does it require any particular measures beyond the appointment of a guardian to protect the rights of an incompetent person facing the termination of parental rights." (Footnote altered; internal quotation marks omitted.) *In re Alexander V.*, 223 Conn. 557, 562, 613 A.2d 780 (1992); see also *In re Zowie N.*, 135 Conn. App. 470, 496, 41 A.3d 1056, cert. denied, 305 Conn. 916, 46 A.3d 170 (2012).

"In some cases, the appointment of a guardian ad litem might well constitute the best available procedure

and be in accord with due process. In others, the court might conclude that a guardian ad litem alone would not be sufficient to comport with due process because of the probability that a parent could be restored to competency within a relatively short period of time. Under the latter set of circumstances, the trial court might conclude that other such measures, including, possibly, a short stay of the termination proceedings, should be taken to protect the parent's fundamental right to care for his or her child." *In re Alexander V.*, supra, 223 Conn. 564. Nonetheless, "[c]ertainly it could not be expected that termination proceedings be stayed indefinitely, or for any great length of time in order to restore a parent to competency, as that would create too great a risk to the welfare of the child and might well create the anomalous situation where the very incompetency that makes termination imperative, prevents it." Id., 565 n.7.

These principles are embodied in Practice Book § 32a-9 (b), which provides in relevant part: "At a competency hearing . . . the judicial authority shall determine whether the parent is incompetent and if so, whether competency may be restored within a reasonable time, considering the age and needs of the child or youth, including the possible adverse impact of delay in the proceedings. If competency may be restored within a reasonable time, the judicial authority shall stay proceedings and shall issue specific steps the parent shall take to have competency restored. If competency may not be restored within a reasonable time, the judicial authority may make reasonable accommodations to assist the parents and his or her attorney in the defense of the case, including the appointment of a guardian ad litem if one has not already been provided."

Here, after a competency hearing, the court found the respondent to be incompetent, and that her competency could not be restored. The respondent did not challenge this finding. The court appointed a guardian ad litem on her behalf, and proceeded to trial. The court's actions were in accordance with § 45a-708 (a) and Practice Book § 32a-9. The respondent does not challenge the procedures she was afforded under the rules of practice. Instead, the respondent now argues that the court should have ordered a continuance, sua sponte, because the evidence presented at trial indicated that "there was a significant likelihood that [the respondent] could have been restored to competency and that she could have been restored to the point where she could raise her children." We are not persuaded.

The court's competency determination was based upon Rabe's evaluation, who concluded that the respondent's "answers suggest a more fundamental defect in her thinking, leading to the conclusion that she suffers from a persistent disorder in thinking commonly seen in [s]chizophrenia."[6] To overcome such a determina-

tion, the evidence before the court must have raised a reasonable doubt as to the respondent's inability to recover, such that the court should have ordered a new competency evaluation and competency hearing. Practice Book § 32a-9 (a).[7] Connecticut law indicates that such a determination is an exercise of judicial discretion, with consideration for the respondent's interest at stake balanced against the needs of the children and for judicial economy. See *In re Alexander V.*, supra, 223 Conn. 565–66; see also *In re Zowie N.*, supra, 135 Conn. App. 495–98 (abuse of discretion standard applied to appellate review of court's denial of motion for second competency evaluation).

"In determining whether a trial court has abused its discretion, an appellate court must make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Accordingly, review of [discretionary] rulings is limited to questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *In re Kaleb H.*, 306 Conn. 22, 32, 48 A.3d 631 (2012). In assessing the desirability of ordering a competency hearing sua sponte, "the standard for the court to employ is whether the record before the court contains specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Evidence is substantial if it raises a reasonable doubt about the [respondent's] competency . . . ." (Citations omitted; internal quotation marks omitted.) *In re Alexander V.*, supra, 223 Conn. 566; see also *In re Zowie N.*, supra, 135 Conn. App. 496–97. "Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is the form of medical reports or other kinds of reports that have been filed with the court." (Internal quotation marks omitted.) *In re Kaleb H.*, supra, 31.

The respondent fails to cite any substantial evidence in the record that would demonstrate that the court abused its discretion in this case. The respondent does not challenge the court's February 5, 2013 finding that she is not competent and not restorable to competency. Instead, the respondent now claims that, by the time of trial, she exhibited behavior consistent with the restoration of competency, such that the court should have ordered a stay in the proceedings. Specifically, she alleges that "the trial court took no account of the remarkable progress and consistency [the respondent] had demonstrated from the time of the evaluation through the present time." The respondent has failed, however, to detail specific factual allegations that, if true, indicate that she could be restored to competency "within a reasonable time." Practice Book § 32a-9 (a) and (b). While she notes that she signed a lease, and

began to attend scheduled visitation with her children, her sole evidence as to an improvement in her mental health is that she had become compliant with medication. Nonetheless, the court detailed, and the record indicated, that a visiting nurse went to her home twice a day to administer medication. Accordingly, the court's decision to proceed to trial was not an abuse of discretion. See, e.g., *In re Kaleb H.*, supra, 306 Conn. 33–36; *In re Zowie N.*, supra, 135 Conn. App. 498–99.

## II

The respondent next claims that the court improperly used her competency evaluation as evidence that she failed to achieve rehabilitation within a reasonable time. Specifically, she asserts that, because the court's order limited the scope of the evaluation to a determination of her competency to assist at trial, pursuant to Practice Book § 34a-21, the respondent had no notice that the court could use Rabe's findings for any other purpose, thus precluding her from exercising her right to remain silent pursuant to Practice Book § 32a-1 (h).[8]

Before we can reach the merits of the respondent's evidentiary claim, we first must determine whether the respondent properly preserved her claim for appellate review. "[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush. . . . [W]henever evidence is admitted without objection, the trier of fact can rely on its contents for whatever they are worth on their face." (Citation omitted; internal quotation marks omitted.) *In re Brianna L.*, 139 Conn. App. 239, 251, 55 A.3d 572 (2012).

Our review of the record reveals that the respondent's counsel stated at trial that he had no objection to the admission of the competency evaluation as a full exhibit and without restrictions. Accordingly, the respondent cannot now claim that the court's reliance on the evaluation for anything other than competency would be a violation of Practice Book §§ 34a-21 (a) through (d) and 32a-1 (h), when no such objection was raised by the respondent when the evaluation was admitted into evidence. The court was free to credit the findings of the report without limitation. *In re Brianna L.*, supra, 139 Conn. App. 251; *In re Anna Lee M.*, 104 Conn. App. 121, 127–28, 931 A.2d 949, cert. denied, 284 Conn. 939, 937 A.2d 696 (2007). We decline to review the merits of this claim because it is not properly preserved.[9]

## III

As her final claim, the respondent asserts that there was insufficient evidence to support the court's finding that she failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the lives of her children, pursuant to § 17a-112 (j) (3) (B) (i). Specifically, the respondent asserts that the court's finding is not supported by the record because the court impermissibly inferred a failure to rehabilitate from the competency evaluation and, absent the evaluation, there was no other evidence to support the court's finding of failure to rehabilitate. We disagree.

Section 17a-112 (j) (3) (B) (i) requires the court to find by clear and convincing evidence that the child "has been found by the Superior Court . . . to have been neglected or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. . . ." See *In re Elvin G.*, 310 Conn. 485, 502–503, 78 A.3d 797 (2013).

"We are mindful that [p]ersonal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . Additionally, the court must analyze the respondent's rehabilitative status as it relates to the needs of the particular child . . . . Finally, we note that [i]n assessing rehabilitation, the critical issue is not whether the parent has improved [her] ability to manage [her] own life, but rather whether [she] has gained the ability to care for the particular needs of the child [or children] at issue." (Citations omitted; internal quotation marks omitted.) *In re Alison M.*, 127 Conn. App. 197, 206–207, 15 A.3d 194 (2011); see also *In re Kristy A.*, 83 Conn. App. 298, 318, 848 A.2d 1276 ("even if a parent has made successful strides in her ability to manage her life and may have achieved a level of stability within her limitations, such improvements, although commendable, are not dispositive on the issue of whether, within a reasonable period of time, she could assume a responsible position in the life of her child" [internal quotation marks omitted]), cert. denied, 271 Conn. 921, 859 A.2d 579 (2004).

The respondent's presenting issues at the time of her children's removal were her mental health, her parenting skills, and her transient housing. The court detailed in its memorandum of decision that first, as to housing, the respondent was transient when the commissioner

filed the petitions, and while she had obtained an apartment by the time of trial, she nevertheless lacked employment, furniture, and the income to pay its rent, and she was living with a convicted felon with a record for domestic violence. Second, as to her parenting skills, the respondent attended twenty-two of seventy possible supervised visitations with her children prior to the filing of the petitions, during which the respondent was often directed by supervisors to pay attention to her children and to act in an appropriate manner. Since the filing of the petitions, the respondent completed a parenting program "and due to the extraordinary efforts of her [department] social worker has been consistent in visiting the children." Finally, as to her mental health, the respondent was hospitalized twice for psychotic behavior after the filing of the petitions, and the respondent failed to follow through with treatment recommendations and outpatient programs upon discharge. Although it is true that, by the time of trial, she had become compliant with her outpatient program and medication, the court found a visiting nurse went to her home to administer her medication twice a day.

The respondent now asserts that the court's finding of failure to rehabilitate is undermined by its reliance on the findings in the competency evaluation. She points to the conclusion of the court's opinion, where the court acknowledged the respondent's improvement, but then detailed that "it [could not] ignore the findings in the competency evaluation that there is a chronic defect in her ability to use goal directed thinking to solve problems and that she suffers from a thought disorder that results in global impairment of her ability to develop insight and problem solve. Any progress that she has made is a case of too little too late to allow the court to find that she has rehabilitated within the meaning of the statute." The respondent alleges that the court's use of Rabe's findings as evidence of her failure to rehabilitate was outside of the court's ordinary knowledge and experience, such that expert testimony was required. The respondent further asserts that, absent the competency evaluation, there was no evidence to support the court's finding of failure to rehabilitate. We are not persuaded.

We begin by setting forth the applicable standard of review. "On appeal, we review a trial court's finding that a parent has failed to rehabilitate herself in accordance with the rules that apply generally to a trier's finding of fact. We will overturn such a finding of fact only if it is clearly erroneous in light of the evidence in the whole record. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling. . . . A finding [of fact] is clearly erroneous when either there is no evidence in the record to support it, or the reviewing

court is left with a definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence." (Citation omitted; internal quotation marks omitted.) *In re Alison M.*, supra, 127 Conn. App. 207.

The competency evaluation was admitted into evidence without limitation, and therefore, as detailed in part II of this opinion, the court was free to credit Rabe's findings "for whatever they are worth on their face." (Internal quotation marks omitted.) *In re Brianna L.*, supra, 139 Conn. App. 251. "Although expert testimony may be accorded great weight when it is offered, there is no requirement for expert testimony in termination of parental rights cases." *In re Jeisean M.*, 270 Conn. 382, 400, 852 A.2d 643 (2004); see also *In re Angela C.*, 11 Conn. App. 497, 498–99, 528 A.2d 402 (1987) (trial court was not required to accept expert's opinion on issue of whether to terminate parental rights nor was testimony of another expert required to support court's judgment); *In re Teshea D.*, 9 Conn. App. 490, 493, 519 A.2d 1232 (1987) (finding no merit to respondent's claim that expert testimony was required to support court's finding that termination was in child's best interest because "[a]lthough both our Supreme Court and this court have often, in this regard, looked to the testimony of mental health experts . . . such expert testimony is not a precondition of the court's own factual judgment as to the child's best interest" [citations omitted]).

Nonetheless, the court's memorandum of decision is clear that the competency evaluation was not the sole evidence of the respondent's failure to rehabilitate. Instead, it is evident from the court's decision that Rabe's findings served as the backdrop to the court's review of the respondent's behavior. The court's decision indicates that it did not infer anything beyond the actual findings of Rabe, namely, that the respondent permanently suffers from a thought disorder that globally affects her ability to form goal directed thinking and to problem solve. Such a use of the competency evaluation is well within the court's fact finding power and authority. See, e.g., *In re Alexander T.*, 81 Conn. App. 668, 676, 841 A.2d 274, cert. denied, 268 Conn. 924, 848 A.2d 472 (2004).

On the basis of the record before us, we conclude that the court's finding regarding the respondent's failure to achieve sufficient personal rehabilitation was not clearly erroneous. There was sufficient evidence to support the court's finding and we are not left with a definite and firm conviction that a mistake has been made. Accordingly, we conclude that the trial court did not err in granting the petition to terminate the respondent mother's parental rights.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** February 28, 2014, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The parental rights of the respondent father as to K and Z were terminated on May 31, 2013. He is not a party to this appeal. Accordingly, we refer in this opinion to the respondent mother as the respondent.

[2] The respondent had a history with the Department of Children and Families (department) prior to this date. The department first became involved on January 19, 2007, when, while pregnant with K, the respondent failed to seek prenatal care for approximately eight months and tested positive for marijuana. In December, 2010, the department again became involved as a result of the respondent's homelessness and transience. Thereafter, the department lost track of the respondent and the case was closed.

[3] The department determined that there were no other family resources available. Also, in its memorandum of decision concerning the termination of the respondent's parental rights, the court detailed that "at the time of [the children's] removal [a department worker] observed two linear marks on [K's] back as well as a circular scar consistent with a cigarette burn. [The respondent] provided conflicting accounts as to the burn. In response to questions by the social worker, K indicated that [the respondent] was responsible for the injuries. The marks were caused by [the respondent's] belt and that [the respondent] caused the burn."

[4] K is diagnosed with adjustment disorder with mixed disturbance of anxiety and depressed mood. In its memorandum of decision, the court detailed that K "is receiving counseling at the Village of Families and Children and is accompanied by her foster mother. Her therapist reports improvement and reduced levels of anxiety. She is bonded to her foster mother. She is also bonded to her biological mother and has said she has two mommies. Her moods were affected by the [respondent's] inconsistencies in visitation." Z also has bonded with his foster mother and has an affectionate relationship with the respondent. He received Birth to Three services for speech and is eligible for special education.

[5] General Statutes § 45a-708 (a) provides in relevant part: "When, with respect to any petition for termination of parental rights filed under section 17a-112, section 45a-715 or section 45a-716, it appears that either parent of the child is . . . incompetent, the court shall appoint a guardian ad litem for such parent. The guardian ad litem shall be an attorney-at-law authorized to practice law in Connecticut or any duly authorized officer of a child-placing agency if the child-placing agency is not the petitioner."

[6] Relevant to the necessity to appoint a guardian ad litem, and to the court's conclusion that the respondent was not capable of restoring to competency, were Rabe's findings that the respondent "frequently maintains that her lawyer will make a custody determination despite several reminders that the judge will make the final determination after considering all the facts. This perseveration does not appear to be due to any problem with memory, but to an impairment of curiosity and insight into how the judicial process operates. . . . [H]er impaired performance may be a reflection of limited cognitive ability, mental illness, language barrier, or medication side effect, or a combination thereof. [Furthermore, the respondent] exhibits similar lack of insight in her persistent failure to recognize the relationship between [the s]pecific [s]teps and success in her attempt to regain custody. . . . [H]er answers suggest a more fundamental defect in her thinking, leading to the conclusion that she suffers from a persistent disorder in thinking commonly seen in [s]chizophrenia."

[7] Practice Book § 32a-9 (a) provides: "In any proceeding for the termination of parental rights, either upon its own motion or a motion of any party alleging specific factual allegations of mental impairment that raise a reasonable doubt about the parent's competency, the judicial authority shall appoint an evaluator who is an expert in mental illness to assess such parent's competency; the judicial authority shall thereafter conduct a competency hearing within ten days of receipt of the evaluator's report."

[8] Practice Book § 34a-21 (a) through (d) establishes the parameters for court-ordered evaluations in juvenile matters.

Practice Book § 32a-1 (h) provides in relevant part: "Any confession, admission or statement, written or oral, made by the parent . . . of the

child . . . after the filing of a petition alleging such child . . . to be neglected, abused or uncared for, shall be inadmissible in any proceeding held upon such petition against the person making such admission or statement unless such person shall have been advised of the right to retain counsel . . . that such person has a right to refuse to make any statement and that any statements such person makes shall be introduced in evidence against such person.''

[9] The respondent also asserts that we should review this unpreserved claim under the plain error doctrine because "the error . . . was plain and failure to grant relief will result in a manifest injustice."

We are not persuaded. "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . [I]nvocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Bowman*, 289 Conn. 809, 817, 960 A.2d 1027 (2008). The court's reliance on an evaluation of the respondent's competency, admitted as evidence without restriction, to assess her ability to achieve rehabilitation, is not "error . . . so obvious that it affects the fairness and integrity of . . . judicial proceedings." (Internal quotation marks omitted.) Id.

Furthermore, the respondent's sole reliance on *In re Samantha C.*, 268 Conn. 614, 666–75, 847 A.2d 883 (2004), to support her claim of plain error is unavailing. Unlike the issue addressed by the court in *In re Samantha C.*, where the parent had been told by the trial court that she could remain silent, and the issue was whether the court may draw an adverse interest against a parent for failing to testify at trial without giving prior notice of its intent to do so, in the present case, Rabe detailed in the evaluation at issue that "[the respondent] understood that she was participating in a set of procedures that were not confidential and that [Rabe] would be summarizing the results in a report that [he] would write and send to the [c]ourt."

————————————————