[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought by the mother to terminate parental rights of a father in their 9 year old son so that the child can be adopted by the stepfather. The action was originally brought in probate court and transferred to this court as a contested matter. General Statutes 45a-715 et seq.
The evidence establishes the following facts: The parents married in June 1984, after a three year relationship. Their son was born October 23, 1984. The parties separated in the summer of 1986, when the child was less than 2 years old, and were divorced in August 1987. The child remained with the mother. The last real visit or contact the father had with the child was when he brought him a present on his third birthday in October 1987.
The mother began dating the stepfather during her separation. He moved into the former family home in 1987, after the divorce. This was an apartment above the maternal grandmother and her husband's home. They married in October 1989, and remained living there until December 1990, when they moved to Northford as a family and built their own home. Mother and stepfather also have a little girl born in May 1991.
The child has no present memory of his father or his past relationship with him. He knows who his father is, but considers his stepfather to be his "Dad." The stepfather is the only father figure he has known since he was 2-1/2 years old. All parties who have talked to the child relate his steadfast desire to be adopted by his stepfather, whom he considers to be his "real dad." He has some mild curiosity about his father, but considers him a stranger and does not want to be forced to visit with him.
The mother claims that the father's parental rights should be CT Page 1634 terminated because he has abandoned his son physically, emotionally and financially. She also firmly believes it would not be in the child's best interests to allow the child to reestablish a relationship with his father because of his five year absence and the strength of the child's bond with and desire to be adopted by his stepfather.
The father claims that the mother, and particularly her stepfather, actively discouraged and prevented him from having a relationship with his son and that he should be given another chance.
The mother and father's separation was stormy, with a series of incidents, arrests and restraining orders. On at least one occasion the stepfather intervened and a fight ensued with injuries and arrests. The father did not choose to fight his divorce constructively in court, but rather took matters in his own hands by confronting the mother directly and avoiding the court system, which only worsened his situation. He erroneously believed that if he did not respond or appear in the divorce proceeding, the divorce would not go through. Instead, the mother proceeded with the divorce and obtained an order of $100 per week child support, even though the father was not working, and supervised visitation at her parents, even though the father previously had unsupervised weekly visits and had a very strained relationship with her stepfather.
Although the mother remained in the family home above her parents, she did change her phone to an unlisted number to prevent direct contact from the father. The father only had telephone contact with his son when the mother called him, which he acknowledges she did on occasion. The supervised visitation went poorly. Father had no car and had to get rides. If he was late, the child left and the visit was cancelled. The stepfather made it clear that he wanted the father to leave them alone.
The mother claims that the father did not appear for the scheduled supervised visits and that she called many times to get the father to visit and finally gave up. There was a period of time when he could not visit due to a work injury. The father claims the mother told him the child was confused and also asked him to leave them alone, to which he finally acquiesced, thinking he could reestablish the relationship later.
The father has never provided any financial support whatsoever since the divorce. He has only worked sporadically due to an CT Page 1635 injury and other legal problems. He was aware of the divorce decree, but did not have funds to contest in. When he had an attorney for his workers' compensation claim, he did file a Motion to Modify to reduce support and obtain a better visitation order in February, 1988. However, he did not pursue his motion in court, even when he received his workers' compensation settlement, which went for other bills.
Since this is a private action brought by one of the parents against the other, no state agency has been involved in the custody of the child or his relationship with either parent, except to prepare the termination study for the court. See Plt. Exh. 5. The report recommends termination of the father's parental rights for the reasons stated. No services were offered or recommended for reunification, except to communicate the father's love and concern to the child.
As defined by law, "termination of parental rights" means "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent . . ." Conn. Gen. Stat. Sec. 45a-707(g). "Although the severance of the parent-child relationship may be required under some circumstances, the United States Supreme Court has repeatedly held that the interest of parents in their children is a fundamental constitutional right that `undeniably warrants deference and, absent a powerful countervailing interest, protection.' Stanley v. Illinois, 405 U.S. 645, 651 (1972); see also In Re Juvenile Appeal (83-CD), 189 Conn. 276, 295 (1983) (noting that `it is both a fundamental right and policy of this state to maintain the integrity of the family')," In re Jessica M.,217 Conn. 459, 464-65 (1991).
Accordingly, our statutes set out specific carefully limited situations in which "countervailing interests are sufficiently powerful to justify the irretrievable destruction of family ties that the nonconsensual termination of parental rights accomplishes. . . In order to secure termination of the respondent's parental rights pursuant to (Sec. 45a-717(f)), the petitioner(s) must allege and prove, bit clear and convincing evidence, that at least one of its enumerated grounds have been satisfied," Id., 465. All of the elements of the termination of parental rights petition muse be proved by clear and convincing evidence. In re Juvenile Appeal (84-AB), 192 Conn. 254, 266 (1984).
A judicial termination of parental rights may not be premised CT Page 1636 on a determination that it would be in the child's best interests to terminate the parent's rights in order to substitute another, more suitable, parent. "A parent cannot be displaced because someone else could do a better job of raising the child." In re Jessica M., supra, 467; In re Baby Girl B., 224 Conn. 263, 280
(1992). Thus, the statutory criteria for termination must be established before determination of the child's best interests comes into play. Id.
Here, after reviewing all of the evidence and applying the appropriate legal standards, the court finds, by clear and convincing evidence, that the respondent father did abandon his child without sufficient excuse or defense to defeat the relief sought and that it would be in the best interest of the child to terminate the father's parental rights.
 "Abandonment focuses on the parent's conduct In re Rayna M., (13 Conn. App. 23, 36 (1987)). It is not the lack of interest alone that is the criterion in determining abandonment. Id., 37. Under General Statutes 17-43a(b), abandonment is defined as the failure to maintain interest, concern or responsibility as to the welfare of the child. "`Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of "interest, concern or responsibility" for the welfare of a child. In re Luke G., 40 Conn. Sup. 316, 323, (1985). Where a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred. In re Juvenile Appeal (Docket No. 9489), (183 Conn. 11
(1981))' . . . . [Section] 17-43a(b)(1) does not contemplate a sporadic showing of the indicia of `interest, concern or responsibility for the welfare of a child.' A parent must maintain a reasonable degree of interest in the welfare of his or her child. `"Maintain" implies a continuing, reasonable degree of concern.'" In re Rayna M., supra, 37-38; In re Migdalia M., 6 Conn. App. 194, 208-209, 210, cert. denied, 199 Conn. 809, (1986), "In CT Page 1637 re Michael M., 29 Conn. App. 112, 121 (1992). (Sec. 17-43a(b)(1), now Sec. 17a-112(b)(1) is identical to Sec. 45a-717(f)(1) applicable here).
Here, for over five years, at a critical age in the child's development, the father did not visit or attempt to visit the child, did not send or provide any financial support whatsoever, did not send any cards, notes or gifts to the child since his third birthday, did not attempt to contact the child through the grandparents, did not utilize the courts to seek visitation, and did nothing to better himself or improve his situation so that he could visit and support his child.
Although the mother did unlist her phone, remarry and change her name, and eventually move out of the family home in December 1990, at least three years had passed during which the mother and child remained in the former family home and the father made no effort to contact or visit the child. Although the father's financial resources were limited, he made no real attempt to visit or support his child, even when he had an attorney and some funds which could have been used to pursue visitation and modify support.
Parenthood involves responsibilities as well as rights. Even a noncustodial parent has some responsibilities for the care of the child, including providing financial support when and as able and maintaining as much contact as visitation orders permit. In re Lori Beth D., 21 Conn. App. 226, 233-34 (1990). Love and concern mean nothing to the child unless expressed. A parent's obligations towards his or her child go further than a minimal interest; responsibility must be shown as well. In re Rayna M., 13 Conn. App. 23,36-38 (1987). The fact that visitation may be too emotional an experience for the parent is not an excuse. In re Shavoughn K., 13 Conn. App. 91 (1987).
Even where, as here, visitation was restricted by the mother, in order to overcome a finding of abandonment when there has been no contact or support for over half the child's lifetime, the father must show an least some effort to maintain contact with the child. In re Teshea D., 9 Conn. App. 490, 492 1987). In cases where claims of abandonment have failed under similar circumstances, the parent has actively fought the restricted visitation or found some means of maintaining contact. See In re Jessica M., 217 Conn. 472-73 fn. 11; In re Migdalia M., 6 Conn. App. 194,210 (1986); In re Luke G., 40 Conn. Sup. 316, 319-320
CT Page 1638 (1985).
Here, the father essentially gave up all responsibility for the care, support and raising of his son to the mother for over three years. Visitation and contact may have been restricted, but the restrictions were not unreasonable under the circumstances and were subject to change, if the effort was made. When the father finally desired to reenter his son's life it was too late. He can not complain now or blame others for his own past serious shortcomings as a responsible parent which lead to the finding that he abandoned his child by failing no maintain a reasonable degree of interest, concern or responsibility as to his welfare.
In contrast, although it is absolutely clear that there is no on-going parent-child relationship between the father and son, the mother has failed to establish by clear and convincing evidence that allowing additional time to establish such a relationship would be detrimental to the child. In re Juvenile Appeal (84-3),1 Conn. App. 463, 479-81 (1984).
The child is safe, secure and well-cared for by his mother and stepfather. The child has actively sought adoption by his stepfather to confirm the parent-child relationship that already exists. All persons who have interviewed the child and investigated his circumstances agree that it is in his best interests to terminate the father's parental rights so that he can be legally adopted by the stepfather. The mother, as petitioner, has established by clear and convincing evidence that the father abandoned the child and that termination of his parental rights are in the child's best interest. The statutory criteria having been satisfied, the petition may be granted.
So ordered.
Karen Nash Sequino, Judge