******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued May 19—officially released July 28, 2015*

*Carolyn Signorelli*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellant (petitioner).

*Erich H. Gaston*, with whom was *Patrick Heeran*, for the appellee (respondent mother).

*Howard J. Wicker*, for the minor children.

*Opinion*

EVELEIGH, J. In this certified appeal, we must decide whether the Appellate Court properly reversed the judgments of the trial court terminating the parental rights of the respondent mother as to her two minor daughters, Nevaeh W. and Janiyah A.[1] On appeal, the petitioner, the Commissioner of Children and Families, asserts that the Appellate Court improperly reversed the judgments of the trial court terminating the parental rights of the respondent on the ground that the trial court failed to address, in writing, each segment of all seven statutory factors contained in General Statutes § 17a-112 (k).[2] We agree with the petitioner and, accordingly, reverse in part the judgment of the Appellate Court.[3]

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "The respondent gave birth to [Nevaeh] in July, 2008. Shortly thereafter, on September 4, 2008, the petitioner . . . invoked an administrative ninety-six hour hold as to Nevaeh due to the respondent's alleged 'substance abuse, unaddressed mental health issues and unstable housing.' An order of temporary custody subsequently was issued on September 8, 2008, and sustained on October 23, 2008. The respondent later engaged in substance abuse treatment at Coventry House, an inpatient facility, where Nevaeh was returned to her care and custody under an order of protective supervision on January 8, 2009. On April 3, 2009, the petitioner invoked a second ninety-six hour hold as to Nevaeh after the respondent was discharged from Coventry House for noncompliance with program rules.

"In March, 2010, after Nevaeh's recommitment to the petitioner, the respondent gave birth to Janiyah. Several months after Janiyah's birth, in January, 2011, Nevaeh's commitment was revoked and she was reunited with the respondent under an order of protective supervision. On July 2, 2012, the respondent was arrested [for interfering with an officer and failure to appear], whereupon an order of temporary custody was granted by the court as to both children. The July 2, 2012 removal was Nevaeh's third removal and Janiyah's first removal from the respondent. On October 24, 2012, both children were adjudicated neglected and committed to the care and custody of the petitioner. On November 30, 2012, the children were placed in a preadoptive home that had previously served as a placement for Nevaeh in 2009 and 2010.

"On February 22, 2013, the petitioner filed termination petitions with respect to the two children, alleging that the respondent's parental rights should be terminated on the grounds that she had failed to rehabilitate, and that she had abandoned the children. A joint trial on the two petitions took place over two days, commencing on October 15, 2013, and ending on November

20, 2013. The respondent was represented at the trial by counsel, as were the children.[4] The petitioner called four witnesses to testify in support of the petitions for termination, and the respondent called two witnesses to testify on her behalf. Thereafter, on January 27, 2014, the trial court . . . rendered its decision. In a seven page memorandum of decision, the court granted both petitions on the grounds that the respondent had failed to achieve a sufficient degree of personal rehabilitation to encourage the belief that within a reasonable time, considering the age and needs of her daughters, she could assume a responsible position in their lives, and that termination of her parental rights was in the best interests of her children." (Footnotes altered.) *In re Nevaeh W.*, 154 Conn. App. 156, 158–60, 107 A.3d 539 (2014). Thereafter, the respondent appealed from the judgments of the trial court to the Appellate Court.

On appeal to the Appellate Court, the respondent claimed, inter alia, that in the dispositional phase of the proceeding, the trial court improperly determined that termination of her parental rights was in the best interests of her two children without making the written findings required under § 17a-112 (k) (4). Specifically, the respondent asserted that the trial court improperly based its finding under § 17a-112 (k) (4) solely on "the children's positive relationship with and likely future adoption by their preadoptive foster parents, without considering or making written findings as to the children's feelings and emotional ties with respect to her, as expressly required by [§ 17a-112 (k) (4)]." Id., 172. The Appellate Court agreed with the respondent, concluding that the trial court's finding with respect to § 17a-112 (k) (4) was "utterly unresponsive to the mandatory statutory requirement that the court consider and make written findings as to the feelings and emotional ties of the child with respect to the child's parents . . . ." (Internal quotation marks omitted.) Id., 175. Accordingly, the Appellate Court reversed in part the judgments of the trial court and remanded the case for further proceedings on the dispositional phase of the termination proceeding. Id., 176. This appeal followed.[5]

On appeal to this court, the petitioner asserts that the Appellate Court improperly reversed the judgments of the trial court for failure to make written findings pursuant to § 17a-112 (k) because it made findings regarding the factors set forth in § 17a-112 (k). The petitioner further asserts that any possible failure by the trial court to state its findings regarding the factors set forth in § 17a-112 (k) was cured by subsequent articulations. Finally, the petitioner asserts that, in any event, the alleged failure would be harmless. In response, the respondent asserts that the Appellate Court properly reversed the judgments of the trial court as they related to the determination that termination was in the best interest of the children. Specifically, the respondent asserts that the Appellate Court properly

concluded that the trial court failed to make written findings as to the factor enumerated in § 17a-112 (k) (4), and that such a failure requires reversal of the trial court's judgments. We agree with the petitioner.

We first set forth the applicable standard of review. To the extent that the petitioner's claim requires us to interpret the requirements of § 17a-112 (k), our review is plenary. See *In re Elvin G.*, 310 Conn. 485, 499, 78 A.3d 797 (2013). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 499–500.

In the present case, the Appellate Court concluded that the trial court failed to comply with § 17a-112 (k) (4) because it failed to set forth express written findings as to the children's emotional ties with the respondent. We disagree.

Section 17a-112 (k) provides in relevant part: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding . . . (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties . . . ."[6]

In the present case, the trial court entitled a part of its memorandum of decision: "Written Findings: General Statutes §§ 17a-112 (k) and 45a-717 (1)." In this part of the decision, the trial court listed each of the seven factors enumerated in § 17a-112 (k) and included written findings underneath each factor. The trial court prefaced the portion of its opinion pertaining to § 17a-112 (k) (4) with the following language: "Feelings and emotional ties of the children with respect to the parents and any persons who have exercised physical care,

custody and control of the children for at least one year and with whom the children have developed significant emotional ties." Immediately following that passage, the trial court reached the following conclusion: "Both children have been placed together with a preadoptive resource who has expressed a willingness to adopt both girls. They are comfortable, secure and safe."

The plain language of § 17a-112 (k) (4) directs the trial court to consider the children's emotional ties with a long list of people in determining whether the termination of the respondent's parental rights is in their best interest. Nothing in that statute, however, required the trial court to consider only the children's emotional ties with the respondent. To the contrary, at the time of trial, both children had been living in the preadoptive foster home for more than one year, and Nevaeh had also been placed with the same family for approximately one additional year before that time. Therefore, it was appropriate for the trial court to consider the children's emotional ties to the preadoptive foster family in considering whether termination of the respondent's parental rights was in the children's best interest.

Accordingly, we disagree with the Appellate Court that the trial court's finding as to § 17a-112 (k) (4) was "utterly unresponsive to the mandatory statutory requirement . . . ." *In re Nevaeh W.*, supra, 154 Conn. App. 175. To the contrary, this court has repeatedly recognized that, in the dispositional stage, it is appropriate to consider the importance of permanency in children's lives. "This court has 'noted consistently the importance of permanency in children's lives. *In re Juvenile Appeal (Anonymous)*, 181 Conn. 638, 646, 436 A.2d 290 (1980) (removing child from foster home or further delaying permanency would be inconsistent with his best interest); *In re Victoria B.*, 79 Conn. App. 245, 263, 829 A.2d 855 (2003) (trial court's findings were not clearly erroneous where much of child's short life had been spent in custody of [petitioner] and child needed stability and permanency in her life); *In re Teshea D.*, [9 Conn. App. 490, 493–94, 519 A.2d 1232 (1987)] (child's need for permanency in her life lends added support to court's finding that her best interest warranted termination of respondent's parental rights). Virtually all experts, from many different professional disciplines, agree that children need and benefit from continuous, stable home environments.' . . . *In re Jeisean M.*, [270 Conn. 382, 400–401, 852 A.2d 643 (2004)].

" 'Stable and continuous care givers are important to normal child development. Children need secure and uninterrupted emotional relationships with the adults who are responsible for their care.' 3 D. Kramer, Legal Rights of Children (2d Ed. Rev. 2005) § 29:11, p. 185; see also J. Goldstein et al., The Best Interests of the Child: The Least Detrimental Alternative (1996) p. 19

('[c]ontinuity of relationships is essential for a child's healthy development'); see also *In re Hanks*, 553 A.2d 1171, 1178 (Del. 1989) ('[N]o child can grow emotionally while in limbo, never really belonging to anyone except on a temporary and ill-defined or partial basis. . . . To grow, the child needs at least the promise of permanency in relationships and some continuity of environment.' . . .). 'Repeatedly disrupted placements and relationships can interfere with the children's ability to form normal relationships when they become adults.' 3 D. Kramer, supra, p. 185." *In re Davonta V.*, 285 Conn. 483, 494–95, 940 A.2d 733 (2008).

Indeed, this court has explicitly recognized that "[i]n regard to children who have bonded with their foster parents, '[o]nce new psychological relationships form, separation from the new parents becomes no less painful and no less damaging to a child than separation from natural or adoptive caregiving parents. Indeed, to the extent that such separations are repeated (as in multiple foster care placements), they make the child more vulnerable and make each subsequent opportunity for attachment less promising and less trustworthy than prior ones.' J. Goldstein et al., supra, pp. 104–105. Termination of a biological parent's rights, by preventing further litigation with that parent, can preserve the stability a child has acquired in a successful foster placement and, furthermore, move the child closer toward securing permanence by removing barriers to adoption. See 3 D. Kramer, supra, § 28:2, p. 17. Even if no adoption is forthcoming, termination can aid stability and lessen disruption because a parent whose rights have been terminated no longer may file a motion to revoke the commitment of the child to the custody of the [petitioner] . . . or oppose an annual permanency plan." (Citation omitted.) *In re Davonta V.*, supra, 285 Conn. 495–96.

In the present case, while the trial court's memorandum of decision was not a model of clarity, the testimony before the trial court, on which it was privileged to rely, essentially reflected these considerations in relation to the children's best interest, specifically, their need for permanence and stability.

Furthermore, in considering the trial court's findings pursuant to § 17a-112 (k) (4), we are mindful that "an opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding. . . . Furthermore, we read an ambiguous trial court record so as to support, rather than contradict, its judgment." (Citation omitted; internal quotation marks omitted.) *In re Jason R.*, 306 Conn. 438, 453, 51 A.3d 334 (2012). Reading the trial court's memorandum of decision in the present case as a whole, we conclude that the trial court did consider the factor set forth in § 17a-112 (k) (4), including the children's emotional ties to the respondent. Specifically, the trial court explained

at the beginning of the memorandum that "Nevaeh . . . has been in [the petitioner's] care on three separate occasions. On September 4, 2008, Nevaeh . . . was placed [on a ninety-six hour hold because the respondent] was homeless and had no way to care for the child. She was committed to [the petitioner] in October, 2008 and reunified to the [respondent's] care in January, 2009. In April, 2009, the child was placed in another [ninety-six] hour hold and again committed to [the petitioner] after [the respondent] was discharged from a drug treatment program for noncompliance. The child was reunified with [the respondent] in December, 2010. On July 2, 2012, Nevaeh was removed from [the respondent] for a third time." The trial court continued: "[Janiyah] resided with [the respondent] until [Janiyah was] removed with Nevaeh . . . on July 2, 2012. On November 30, 2012, both children were placed in a preadoptive foster home. Nevaeh . . . has previously been placed with this family for [more than one] year." These findings by the trial court demonstrate that the trial court did consider the children's relationship with the respondent.

Moreover, to the extent that there is any ambiguity in the trial court's memorandum of decision, that court's subsequent articulations sufficiently clarified its ruling. "It is well established that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Priest* v. *Edmonds*, 295 Conn. 132, 140, 989 A.2d 588 (2010).

In the present case, after this court granted the petitioner's petition for certification to appeal and prior to the appellate briefs being submitted by the parties, pursuant to Practice Book §§ 60-2 (1)[7] and 60-5,[8] this court ordered the trial court to "complete the trial court record" by responding to, inter alia, the following question: "In its judgment granting the termination of parental rights petition as to the [respondent], did the trial court consider [§ 17a-112 (k) (4)]?" The trial court answered this question in the affirmative and further articulated as follows: "As to the feelings and emotional ties of the children with respect to their parents, any guardians of such children's persons and any person who has exercised physical care, custody or control of the children for at least one year and with whom the children have developed significant emotional ties, the court found that [Nevaeh] and [Janiyah], as siblings, are placed together and appear to be doing very well and are comfortable in their current placement. The current placement is a preadoptive resource for both children. On April 25, 2013, this court . . . granted the

petitioner's motion to cease visitation of [the respondent] as to [Neveah] upon the recommendation of [Neveah's] therapist citing Neveah's refusal to see [the respondent or her] father and her need to feel more secure and to process her trauma. The children's foster mother, who was a credible witness, described [Neveah's] reactions when being picked up for visits with [the respondent] or [her] father as 'crazy, screaming, kicking, crying, yelling I don't wanna go.' . . . The foster mother described [Neveah] and [Janiyah] as each other's best friend."[9]

Thereafter, the trial court filed a supplemental articulation. In the supplemental articulation, the trial court further clarified that it relied on the credible testimony of social workers from the Department of Children and Families, and the foster mother detailing the instability in the children's lives, positive changes made while in the foster home, Neveah's negative reaction to the respondent and the very strong bond between Neveah and Janiyah. The trial court further clarified that it had relied on testimony by Ines Schroeder, a psychologist who was qualified as an expert in clinical and forensic psychology. The trial court detailed that Schroeder had testified as follows: "Given the information I received during the evaluation as well as finding out a bit more about what's happening with the children at that point I felt it was much more important to provide stability and permanency for the children than to consider continued attempts to reunify."

"Parental termination litigation, including the present case, often involves testimony from various child welfare professionals. 'The testimony of professionals is given great weight in parental termination proceedings. . . . It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses. . . . It is the quintessential function of the fact finder to reject or accept certain evidence, and to believe or disbelieve any expert testimony. . . . The trier may accept or reject, in whole or in part, the testimony of an expert offered by one party or the other.' . . . *In re Carissa K.*, 55 Conn. App. 768, 781–82, 740 A.2d 896 (1999). Nevertheless, although the trial court may rely on expert testimony, it ultimately must make its own independent determination as to the best interest of the child. *In re Jeisean M.*, [supra, 270 Conn. 398] ('[a]lthough we often consider the testimony of mental health experts . . . such expert testimony is not a precondition of the court's own factual judgment as to the child's best interest' . . .). In sum, we must defer to both the trial court's weighing of the expert

testimony presented and the trial court's independent factual determination as to what was in [the child's] best interest." *In re Davonta V.*, supra, 285 Conn. 488–89. On the basis of the record before us, we conclude that the foregoing articulations clarify any ambiguity in the trial court's original memorandum of decision and establish that the trial court considered the emotional ties of the children pursuant to § 17a-112 (k) (4).

The respondent asserts that we should not rely on the articulations by the trial court because they are improper attempts by the trial court to revise its decision. Having fully considered the respondent's claim, we decline her invitation to ignore the articulations. Practice Book §§ 60-2 and 60-5 give this court the power to order the trial court to articulate the basis of its decision and to further perfect the record for our review. Indeed, the importance of the role of articulations is highlighted by Practice Book § 61-10 (b), which was recently amended in 2013 and presently provides in relevant part: "The failure of any party on appeal to seek articulation . . . shall not be the sole ground upon which the court declines to review any issue or claim on appeal. If the court determines that articulation of the trial court decision is appropriate, it may remand the case pursuant to Section 60-5 for articulation by the trial court within a specified time period. . . ." As the commentary to § 61-10 explains: "Subsection (b) was adopted to effect a change in appellate procedure . . . . In lieu of refusing to review [an] issue, when the court determines that articulation is appropriate, the court may now remand the case to the trial court for an articulation and then address the merits of the issue after articulation is provided." In the interest of judicial economy and proper presentation of the issues on appeal, this court has repeatedly ordered the trial court to articulate the factual and legal basis for its decisions and this court has relied on those articulations to resolve the issues on appeal. See, e.g., *State* v. *Kelly*, 313 Conn. 1, 4, 95 A.3d 1081 (2014); *Redding Life Care, LLC* v. *Redding*, 308 Conn. 87, 94, 61 A.3d 461 (2013). Accordingly, we conclude that the Appellate Court improperly determined that the trial court failed to make the appropriate findings under § 17a-112 (k) (4).

The petitioner also claims that the trial court was not obligated to make explicit written findings as to each aspect of the seven factors enumerated in § 17a-112 (k) as these factors are only guidelines. In support of her claim, the petitioner relies on *In re Eden F.*, 250 Conn. 674, 741 A.2d 873 (1999). In *In re Eden F.*, this court concluded that, "[a]lthough [General Statutes (Rev. to 1999)] § 17a-112 (d) (1) and (2)[10] mandated that the trial court make written findings regarding the timeliness, nature, extent and reasonableness of the efforts made to reunify parent and child, § 17a-112 contained nothing to indicate that any such finding was a

prerequisite to the termination of parental rights. Thus, when the petitions in this case were filed, the factors to be considered under [that statute] served only to guide the trial court in making its ultimate decision whether to grant the termination petition. See, e.g., *In re Christine F.*, 6 Conn. App. 360, 369, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769 (1986) (termination in best interest of child despite trial court's conclusion that strong emotional ties existed between mother and child)." (Footnote added.) *In re Eden F.*, supra, 690–91.

Although we have not had the occasion to explicitly address whether a trial court is obligated to make explicit written findings as to each aspect of the seven factors enumerated in § 17a-112 (k) since *In re Eden F.*, we take the opportunity to do so herein. As we explained in *In re Eden F.*, "the fact that the legislature [had interpolated] objective guidelines into the open-ended fact-oriented statutes which govern [parental termination] disputes . . . should not be construed as a predetermined weighing of evidence . . . by the legislature. Where . . . the record reveals that the trial court's ultimate conclusions [regarding termination of parental rights] are supported by clear and convincing evidence, we will not reach an opposite conclusion on the basis of any one segment of the many factors considered in a termination proceeding . . . ." (Citations omitted; internal quotation marks omitted.) Id., 691.

Indeed, as this court has previously explained, "[t]he balancing of interests in a case involving termination of parental rights is a delicate task and, when supporting evidence is not lacking, the trial court's ultimate determination as to a child's best interest is entitled to the utmost deference. . . . Although a judge [charged with determining whether termination of parental rights is in a child's best interest] is guided by legal principles, the ultimate decision [whether termination is justified] is intensely human. It is the judge in the courtroom who looks the witnesses in the eye, interprets their body language, listens to the inflections in their voices and otherwise assesses the subtleties that are not conveyed in the cold transcript." (Internal quotation marks omitted.) *In re Davonta V.*, supra, 285 Conn. 497. Accordingly, we reaffirm our holding in *In re Eden F.* that, although a trial court shall consider and make written findings regarding the factors enumerated in § 17a-112 (k), a trial court's determination of the best interests of a child will not be overturned on the basis of one factor if that determination is otherwise factually supported and legally sound.

In the present case, we conclude that the trial court's finding as to the children's best interest is factually supported and legally sound. Therefore, we will not substitute our judgment for that of the trial court.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to affirm the judgments of the trial court.

In this opinion the other justices concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

[1] We note that the trial court also rendered judgments terminating the parental rights of the minor children's respective fathers. Those judgments are not, however, at issue in the present appeal. Consequently, in the interest of simplicity, we refer to the mother of the minor children as the respondent. See *In re Nevaeh W.*, 154 Conn. App. 156, 157 n.1, 107 A.3d 539 (2014).

[2] General Statutes § 17a-112 (k) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

[3] On appeal to the Appellate Court, the respondent claimed that two of the trial court's factual findings were clearly erroneous. See *In re Nevaeh W.*, 154 Conn. App. 156, 160–71, 107 A.3d 539 (2014). The Appellate Court rejected those claims and, accordingly, affirmed the judgments of the trial court in part. Id., 158. That portion of the Appellate Court's judgment is not, however, at issue in the present appeal.

[4] We note that counsel for the minor children has adopted the petitioner's appellate briefs before both the Appellate Court and this court. See *In re Nevaeh W.*, 154 Conn. App. 156, 159 n.3, 107 A.3d 539 (2014).

[5] This court granted the petitioner's amended petition for certification to appeal limited to the following issues: (1) "Did the Appellate Court properly conclude that . . . § 17a-112 (k) provides that the trial court is deprived of authority to enter a dispositional order of termination of parental rights if it fails to address in writing each segment of all seven statutory factors?"; and (2) "If the answer to question one is in the affirmative, did the Appellate Court properly conclude that the remedy for a trial court's failure to address in writing each segment of all seven statutory factors is reversal of the judgment?" *In re Nevaeh W.*, 316 Conn. 915, 113 A.3d 69 (2015).

[6] For the full text of § 17a-112 (k), see footnote 2 of this opinion.

[7] Practice Book § 60-2 (1) provides in relevant part: "The supervision and control of the proceedings on appeal shall be in the court having appellate jurisdiction from the time the appeal is filed, or earlier, if appropriate, and, except as otherwise provided in these rules, any motion the purpose of which is to complete or perfect the record of the proceedings below for presentation on appeal shall be made to the court in which the appeal is pending. The court may, on its own motion or upon motion of any party, modify or vacate any order made by the trial court, or a judge thereof, in

relation to the prosecution of the appeal. It may also, for example, on its own motion or upon motion of any party: (1) order a judge to take any action necessary to complete the trial court record for the proper presentation of the appeal . . . .”

[8] Practice Book § 60-5 provides in relevant part: “If the court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's factual findings or decision. . . .”

[9] On appeal to the Appellate Court, the respondent asserted that the trial court's findings as to § 17a-112 (k) (1), (2) and (4) were improper. See *In re Nevaeh W.*, supra, 154 Conn. App. 172 n.8. The Appellate Court did not reach the respondent's claims regarding the trial court's findings under § 17a-112 (k) (1) and (2) because it reversed the judgment of the trial court as it related to the dispositional phase on the ground that the trial court's findings under § 17a-112 (k) (4) were improper. Id.

In the order for articulation, this court ordered the trial court to articulate its decision as it related to § 17a-112 (k) (1), (2) and (4). In its response, the trial court further articulated its findings as to § 17a-112 (k) (1), (2) and (4).

On appeal to this court, the respondent does not renew her claims related to § 17a-112 (k) (1) and (2) and neither party addresses these claims in their brief. Accordingly, we address the trial court's findings only as they relate to § 17a-112 (k) (4).

We note, however, that even if we were to consider the respondent's claims regarding the trial court's findings under § 17a-112 (k) (1) and (2), we would conclude that the trial court's memorandum of decision and articulations demonstrate that its findings under § 17a-112 (k) (1) and (2) are factually supported and legally sound.

[10] We note that subsection (d) of § 17a-112 was redesignated as subsection (k) in 2000. See Public Acts 2000, No. 00-137, § 1.